UNITED STATES of America Plaintiff,

v.

**Rudolph ISLEY and Elaine Isley Defendants**

**No. 99–CV–4449 (WJM).**

United States District Court,
D. New Jersey.

Sept. 15, 2004.

Lawrence P. Blaskopf, United States Department of Justice, Tax Division, Washington, DC, for Plaintiff.

Frank Agostino, Esq., Calo Agostino, PC, Hackensack, NJ, for Defendants.

## MEMORANDUM OPINION

MARTINI, District Judge.

## I. INTRODUCTION

This is in action brought by the United States (hereinafter the "Government") for the collection of income tax, interest and penalties against Rudolph and Elaine Isley (hereinafter the "Defendants"). The tax periods at issue date from 1974 though 1998, but not including each and every intermediate year. Before this Court is the Government's motion for summary judgment to reduce to a judgment the allegedly outstanding monies owed to the Government by the Defendants, and Defendants cross-motion. Because the factual basis of this litigation is well-known to the parties, the Court here makes only a cursory outline of the factual and procedural history of the case.

On or about August 23, 1984, Rudolph Isley filed for bankruptcy. On or about July 25, 1989, Rudolph Isley's bankruptcy

petition was discharged. On or about April 2, 1991, the Bankruptcy Court entered a consent order determining the extent of the Government's unsecured priority claims (for unpaid *taxes* and *interest* ) and unsecured penalty claims [1] against Defendant Rudolph Isley for the tax years 1971, 1972, 1973, 1974, 1975, 1976, 1978, 1981, and 1982. However, only tax years 1974, 1976, 1978, and 1982 are in dispute in this litigation. On or about April 19, 1991, the Government amended the Certificate of Assessment for 1974—and assessed an amount of *tax* equal to that in the Consent Order for 1974. Similarly, in early January 1994, the IRS amended the Certificates of Assessment for 1976 and 1978: the Government made administrative assessments in the form of abatements of *tax* against the Defendants—in addition to assessments already made. These abatements (in conjunction with assessments made prior to the start of bankruptcy) brought the Government's claim for unpaid *taxes* on its Certificates of Assessment into conformity with the Consent Order for the years 1976 and 1978. The 1982 Certificate of Assessment had an entry for unpaid *tax* as of September 18, 1989—some time prior to the parties' signing the Consent Order—and this amount equaled the amount later put in the Consent Order. Thus, the Government did not need to make any amendments to the Certificate for 1982 in order to bring the tax amount into harmony with the Consent Order. In short, although the Certificates of Assessment reflect the amount of taxes agreed to by the parties in the Consent Order, the Gov-

ernment made no assessments or abatements expressly bringing the Certificates into conformity with regard to the amounts of unpaid interest listed in the Consent Order. And both taxes and interest are components of the Government's unsecured priority claim against Defendant Rudolph Isley. On September 20, 1999, the Government brought suit against Defendants and filed a complaint. An amended complaint was filed on October 15, 1999 seeking relief with regard to additional tax years in dispute. On or about September 13, 2000, Judge Bassler issued an opinion granting, in part, and denying, in part, Defendants' motion to dismiss.

The Government has since filed a motion for summary judgment. Defendants have filed a cross motion for summary judgment. The Court—at the request of the parties—delayed adjudicating the instant motion who until recently were working towards a negotiated resolution of the instant litigation. Negotiations have failed. When those negotiations broke down, the Court requested new and updated briefing.[2] The Court has on two occasions required further supplemental briefing to clarify the parties' conflicting financial calculations and legal arguments. Oral argument was held on August 24, 2004, and a further conference on the record was held on August 30, 2004.

For the reasons set forth below, the Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment. For the reasons set forth above, the Court DENIES Defendants' motion for summary judgment.

---

1. It is now undisputed that the unsecured penalty claims for tax listed in the schedule of the Consent Order have been paid. The Government here is seeking to reduce to judgment its remaining unsecured priority claims for tax and interest for 1974, 1976, 1978 and 1982—with interest accruing on those amounts since the date Rudolph Isley filed for bankruptcy.

2. In its two most recent submissions to the Court, the Government—in a stunning change of position—reminiscent of the Isley's Brothers *Twist and Shout*—changed their financial calculations and the amount claimed for each of the tax years within the Consent Order.

## II. STANDARD OF REVIEW

Summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant. In deciding a motion for summary judgment, the Court must construe the facts and reasonable inferences in a light most favorable to the non-movant. However, only disputes about facts that might affect the outcome of the suit under governing law will preclude entry of summary judgment. Once the initial moving party has carried its initial burden of establishing an absence of a genuine issue of material fact, the non-movant must do more than simply show that there is some metaphysical doubt as to those facts. No issue for trial exists unless the nonmoving party can adduce sufficient evidence favoring it on the disputed factual issue such that a reasonable jury could return a verdict in that party's favor. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

### A. 1974 Tax Liability

The Government alleges that on April 19, 1991, Rudolph Isley was assessed taxes in the amount of $67,296.12, that this assessment was made timely, that this amount corresponds to the amount listed in the schedule of the April 2, 1991 Consent Order for unpaid taxes, that the Government need make no assessment for unpaid interest corresponding to the amount of unpaid interest listed in the schedule of the Consent Order, and that although some payments have been made against this tax assessment, Rudolph Isley owes $329,917.83—as of April 1, 2004. (Generally, throughout the remainder of this opinion, unless otherwise indicated, all assessments, taxes, penalties and interest are determined with respect to April 1, 2004.) The Government's supporting financial calculations and initial[3] assumptions can be found in the Declaration of Elba Y. Porrata–Doria, Ex. A (Aug. 26, 2004). The calculation starts with Defendant Rudolph Isley's initial debt owing to the Government under the terms of the Consent Order: $67,296.12 for tax, and $77,247.12 for interest. The prior amount (for tax owed) was assessed on the Certificate of Assessment for 1974, but not the latter amount (for interest). The Government's calculation also assumes that these amounts were owed as of August 23, 1984: the date Defendant filed for bankruptcy.[4] This amount grew over time reflecting accrued interest (and occasional) payments accruing against the initial amount: tax plus interest agreed to in the Consent Order. The rate of interest during the period in which unpaid debt accrued is governed by statute. As of April 1, 2004, $329,917.83 is owed according to the Gov-

---

3. "Initial" in the sense of the original debt on which interest accrues over time. Unfortunately, the calculations herein were not originally presented to the Court with the Government's first filings.

4. The Court notes that the Consent Order's schedule has two footnotes indicating that O'Kelly Isley's and Ronald Isley's owe tax and interest "[a]s of the date of the petition," but no such footnote appears establishing that Rudolph Isley's debt accrues from the date of the petition, as opposed to the date of the Consent Order. It appears to the Court that this was an oversight in draftsmanship. The parties do not dispute this point.

ernment's most recently submitted set of financial calculations.[5] The Government's financial calculations—as presented in the August 26, 2004 declaration—are pellucidly clear. The assumptions are equally straightforward. Only pure matters of law remain in dispute. And generally, the Government's position benefits from the presumption of correctness. The Court agrees with this set of calculations. And now turns to the defenses put forward by Defendant. *See* Defendants' Response to the United States' Supplemental Brief Regarding Tax Year 1974 (May 11, 2004), and Defendants' Omnibus Opp'n (Aug. 29, 2004).

1. Defendants argue that Elaine Isley has no 1974 tax liability.

Defendants are correct. This was the position taken by Judge Bassler in his prior opinion. *See* Bassler Op. at 8. Elaine Isley has no 1974 tax liability. However, the Isleys have sought specific relief in this regard. They have asked the Court to order the IRS "to abate the 1974 assessment against Elaine Isley." Defendants' Response to the United States' Supplemental Brief Regarding Tax Year 1974 ¶ I (May 11, 2004). The Isleys have put forward no law authorizing the Court to grant this relief. Moreover, this Court will award no judgment against Elaine Isley for 1974 tax liability. The Government has put forward no law making this liability joint or several.

2. Defendants argue that the assessments against the 1974 tax year do no enjoy the presumption of correctness.

*First,* Defendants argue that the claims brought against the 1974 tax year have expired per the three year statute of limitations for a valid assessment. Judge Bassler has already ruled on this precise question. *See* Bassler Op. at 12. The Court held that Defendants' statute of limitations defense for 1974 tax liability fails. Defendants did not seek reconsideration. This ruling remains law of the case.

*Second,* Defendants argue that errors with regard to the Government's calculation of Defendants' tax liability in prior proceedings or during this proceeding but in prior briefing extinguishes the presumption. The Court fails to see how arithmetic errors made in earlier stages of this litigation, but since corrected, create a genuine issue of material fact precluding summary judgment where Defendants fail to argue that those (or other) mistakes remain. Nor does the Court see support for Defendants' position in *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976)—which stands for a somewhat different proposition—i.e., "proof that an assessment is utterly without foundation is proof that it is arbitrary and erroneous [thereby vitiating the presumption]." *Janis* at 442, 96 S.Ct. 3021; *but cf. Freck v. IRS,* 37 F.3d 986, 992 n. 8 (3d Cir.1994) ("we are not certain how an inability or failure on IRS's part to balance its figures or explain why it cannot do so affects the assessments' presumptive validity").

3. Defendants argue that the Government has the burden of proof in establishing that its assessments are correct.

■ Defendants argue that the Government has the burden of proof with regard to proving the correctness of its assessments and calculations of interest based on those assessments. Defendants cite a pro-

---

**5.** Defendants do not contest the arithmetic involved in these calculations. *See* Defendants' Omnibus Opp'n at 15. Defendants do object to substantive liability and bring forth many affirmative defenses.

vision of the IRS Restructuring and Reform Act of 1998, Pub.L. 105–206, Title III, § 3001(a) (July 22, 1998), *as amended by*, Pub.L. 105–277, Div. J, Title IV, § 4002(b) (Oct. 21, 1998). In particular, Defendants cite Internal Revenue Code § 7491(a)(1) [6] as authority for their position. The Court does not agree. This Act has only prospective effect and generally applies to taxable periods and events [7] after its enactment date: July 22, 1998. It has no application with regard to the 1974 tax year discussed here, or with regard to any other tax year in this dispute, except for the 1998 tax year—the very last, chronologically speaking, of the tax years in dispute. More importantly, the amount of money sought by the Government is expressly tied to the amounts listed in the Consent Order's schedule. The parties agreed to this amount. Thus the assessment for tax in that amount is correct.

 4. Defendants argue that IRS transcripts confirm that the ten year statute of limitations for collections expired before the suit commenced.

The extent of liability for 1974 tax and interest (against Rudolph Isley) as of the date of the bankruptcy filing was finalized by the Bankruptcy Court in its April 2, 1991 Consent Order. This decision was not contested or appealed by Rudolph Isley: Rudolph Isley's attorney signed the Consent Order. Thereafter, the IRS made an April 19, 1991 assessment for tax in conformity with the amount listed in the Consent Order. Thus the ten year period had not run by the time the initial and the amended complaints were filed in 1999.

The Isleys contend the Government, having destroyed allegedly relevant bankruptcy records, must rely on notations from remaining transcripts indicating that the ten year statute of limitations had passed, and that the missing files would bear out the Defendants' position. (Alternatively, the Isleys argue that the clearly wrong prior financial calculations of the Government submitted prior to the most recent August 26, 2004 Government filing, establishes the need for these missing records, thereby shifting the burden of proof on to the Government.) The amounts listed in the Consent Order were agreed to by the parties. Information in the missing files may (or may not) have supported the determinations made by the Bankruptcy Court which were ultimately embodied in the Consent Order, but those proceedings are now closed and the terms of the Consent Order are res judicata in relation to now pending proceedings before this Court. At most the now missing files might lead an unbiased observer to conclude that the amounts embodied in the Consent Order were wrongly determined or determined at a time beyond some relevant statute of limitations. But the terms of the Consent Order waive errors with

**6.** 26 U.S.C. § 7491(a)(1), IRC § 7491(a)(1) ("If, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue."); *cf.* 26 U.S.C. § 7491(c).

**7.** The Court does not believe that the institution of suit post July 22, 1998 is an event for the purpose of the statute. *See* H.R.Conf. Rep. 105–599, 105th Cong., 2d Sess., 1998 U.S.C.C.A.N. 288, 1998 WL 915495, at *242 (June 24, 1998) ("An audit is not the only event that would be considered an examination for purposes of this provision. For example, the matching of an information return against amounts reported on a tax return is intended to be an examination for purposes of this provision. Similarly, the review of a claim for refund prior to issuing that refund is also intended to be an examination for purposes of this provision."). The institution of suit, as with the institution of suit in 1999 in the instant case, does not seem to be an analogous "event" to those described in the legislative history.

regard to the calculations (or negotiations) that led to the particular amounts agreed to and also concomitant waive statute of limitations defenses with regard to the amounts agreed to. Furthermore, ten years—the relevant time period—had not elapsed between the 1991 assessment and the institution of this suit in 1999. Lastly, the Isleys have made no proffer—actual or theoretical—illustrating how any potential information in the missing files might upset the correctness of the Government's August 26, 2004 calculations for the 1974 tax year. The Court cannot imagine any.

5. Defendants argue that the 1974 tax and pre-petition interest were paid in full during the bankruptcy proceedings.

Defendants are correct. The Government is seeking tax and interest as of August 23, 1984 and interest accruing thereafter—less payments.

The Court has reviewed the Consent Order and Judge Sarokin's opinion, the Court sees nothing releasing Defendants from post-petition interest accruing after the August 23, 1984 bankruptcy filing. Defendants' Response to the United States' Supplemental Brief Regarding Tax Year 1974 purportedly quotes paragraph 8 of the Trustee's Final Report within the January 25, 2001 Agostino Declaration, Exhibit B. See Defs' Response Br. For 1974 at 10–11. The passage quoted in the brief does not appear in the exhibit. Even were the Court to credit the validity of the statement quoted in Defendants' brief, the trustee only (allegedly) purports to wipe out pre-petition liability, not post-petition liability accruing on the amounts agreed to in the Consent Order's schedule.

■ Additionally, Defendants posed the following interrogatory to the Government in discovery proceedings: "For each pay-

ment received through bankruptcy, explain how credit against the liability of the bankruptcy estates of Rudolph Isley, and Ronald Isley and O'Kelly Isley was apportioned." United States' Responses to Defendants' Interrogatories ¶ 15 (July 11, 2000). To which the Government responded: "The United States is unable to identify why it applied funds to the tax accounts to which the funds were applied . . . ." *Id.* Although the Government's answer is somewhat troubling, it appears to the Court that the Government's response is limited to how payments were made against the bankruptcy estates—not the individual liability against each of the named parties that remained with regard to still accruing post-petition assessments, penalties, and interest. Moreover, the Defendants have put forward no evidence that the bankruptcy trustee made payments towards settling post-petition liability that was applied to the tax accounts of Ronald or O'Kelly Isley, but should have been applied to Defendant Rudolph Isley's tax account. Therefore the Government's admission generates no disputed fact precluding summary judgment. Moreover, the payments at issue here were made by the trustee, and thus if the trustee fails to specify the debt to which they are to be applied, the IRS may make that determination. From the point of view of Defendant Rudolph Isley, these payments were involuntary. *See U.S. v. Pepperman,* 976 F.2d 123, 126–27 (3d Cir.1992). Thus the Government and trustee had considerable discretion in this regard.

6. Defendants argue that the statute of limitations[8] bars the collection of any additional amounts from Rudolph Isley for 1974.

■ The Isley's have already attempted to bring a statute of limitations (hereinaf-

---

8. The Isleys refer both to the three year period running between filing and assessment,

and the six or ten year period running be-

ter "SOL") defense in prior proceedings. However, the Consent Order determined the extent of Rudolph Isley's 1974 post-petition tax liability as of the date of the filing of the bankruptcy petition. This included an unsecured priority claim for taxes of $67,296.12 and for interest of $77,247.12. *See* Consent Order p. 6. Judge Bassler held that these amounts are now established as a matter of claim preclusion and against any challenge rooted in the three year statute of limitations. *See* Bassler Op. 8–12.[9] This Court agrees, and adds that substantive liability for these amounts are now fixed as law of the case. *See* Bassler Op. 11 ("the Government is correct that Rudolph [Isley] is barred by claim preclusion from challenging his income tax liabilities for 1974 and 1978").[10] Elementary principles of res judicata and policies founded in the conservation of judicial resources preclude the Court from returning to the SOL defense which was already discussed and rejected in prior proceedings. Moreover, the SOL does not bar the collection of post-petition liability. (Nor, as explained above, is the Govern-

ment barred from seeking post-petition liability because administrative files regarding the extent of pre-petition liability have been lost or destroyed.)

7. Defendants argue that the Consent Order neither extends the statute of limitations nor estops Defendants from asserting it in later proceedings.

As explained in Section 6, above, the Court—even if not barred by the Consent Order to address the SOL defense—is barred by the doctrines of claim preclusion and law of the case from returning to this issue.

8. Defendants argue that the Bankruptcy Court substantively consolidated the assets and liabilities of the three Isley brothers, and therefore payments by Ronald Isley and O'Kelly Isley must also extinguish tax liens against Defendant Rudolph Isley.

The June 19, 1989 Consolidation Order merged the assets and liabilities of the

tween assessment and collection. *See* 26 U.S.C. §§ 6501, 6502.

9. The Court adds that the IRS made the assessment, per the Consent Order, on April 19, 1991 in the amount of $67,296.12—to the penny. *See* United States' Supp. Brief in Support of its Motion for Summary Judgment, Declaration of Lawrence Blaskopf (Dec. 11, 2000) (1974 entry at p. 3). Thus because this suit was brought in 1999, the Court finds that the 10 year statute of limitations on collections had not run—an issue not addressed by Judge Bassler. (Because the assessment was made in 1991, a ten year (not a six year) statute of limitations on collections applies.)

*However,* the Court notes that the IRS made a contemporaneous assessment for interest in the amount of $224,959.05—an amount far exceeding and different from the interest amount agreed to in the Consent Order: $77,247.12. The Government in these proceedings is seeking to collect on the amount

agreed to in the Consent Order (unsecured priority claims for tax plus interest), not the amount *actually assessed* in the Certificate of Assessment for 1974.

10. Judge Bassler specifically mentioned both the assessed tax liability for $67,296.12 and the unassessed interest liability for $77,247.12. The Court believes that Judge Bassler's unambiguous prior holding finding that the Consent Order established substantive liability in these amounts precludes any defense grounded in the Government's failure to assess interest on the Certificate of Assessment an amount equal to that in the Consent Order. *See* IRC § 6601(e)(1). The same is true for 1978. Although not expressly mentioning the dollar amounts in the Consent Order for 1976 and 1982—Judge Bassler's reasoning—relying on claim preclusion—equally applies to these tax years too. *See* Bassler Op. at 11 ("The normal rules of res judicata ... apply to the decisions of bankruptcy courts.").

debtors' separate cases: the assets and liabilities of the three Isley brothers. Defendants argue that "because the bankruptcy estates of the three Isley brothers were consolidated for purpose of liability, the three bankruptcy estates must also be consolidated for purposes of payment. Thus, all the payments applied during the bankruptcy, and after, must apply to liability in its totality, because payment by one joint obligor reduces the liability of the others." Defs' Response 1974 at 22–23. This is true as far as it goes. But Defendants further conclude: "[T]o the extent that Rudolph Isley had any tax liability for the 1974 year which survived bankruptcy, as a matter of law, that liability was extinguished when Ronald Isley paid [his] federal tax liens in full [for that year, as recognized by the IRS]." This conclusion does not follow and Defendants cite no law—statutory, bankruptcy rule, or case law—as authority for this counterintuitive conclusion.

Consider a related hypothetical: two debtors each have a $1,000 debt to a single creditor. Now suppose both debtors go into bankruptcy, and the separate bankruptcy estates are merged. Assume the common estates have $2,000 in combined assets to pay the single creditor. The trustee orders a $1,000 in payment, and further orders that that payment satisfy only the first debtor's debt to the creditor. If that payment *also* satisfies the $1,000 owed to the creditor by the second debtor, then the mere act of consolidation effectively halved the common creditor's claim. This outcome makes no sense—particularly because "the purpose of substantive consolidation is to ensure *equitable* treatment of all creditors." *In re John Cooper,* 147 B.R. 678, 682 (Bkrtcy.D.N.J.1992).

9. Defendants argue that the IRS misapplied $1,781,852.94 in payments, part or all of which should be credited to Rudolph Isley's tax liabilities.

■ Here Defendant Rudolph Isley argues—following his argument in Section 8 above—that specific payments made by the trustee were not (properly or fairly) credited specifically to his (post-petition) tax debts. Rudolph Isley argues that these payments should be credited against his tax liability—or, in the alternative, that 1/3 of those payments should be credited to his liabilities. Here the only law cited as authority is IRC § 6013(d). This provision has no substantial relation to the issue in dispute.[11] Moreover, the payments at issue here were made by the trustee, and thus if the trustee fails to specify the debt to which they are to be applied, the IRS may make that determination. From the point of view of Defendant Rudolph Isley, these payments were involuntary. *See U.S. v. Pepperman,* 976 F.2d 123, 126–27 (3d Cir.1992). Thus the Court cannot seek to redirect these payments (in whole or in part) to Defendant Isley's remaining post-petition debts.

10. Defendants have argued that all payments collected after the expiration of the statute of limitations must be applied to other tax years.

As explained in sections 4 to 7, *supra,* discussing Defendants' statute of limitations defense, the Court has already held that the statute of limitations did not expire with regard to 1974 tax liability. This issue was already addressed in prior proceedings and is now law of the case. *See* Bassler Op. 10–12. Thus there is no reason to address the propriety of assessing

---

**11.** IRC § 6013(d) (dealing with "special rules" applying to husbands, wives, and joint returns). Here all funds in dispute were credited to O'Kelly Isley—not Elaine Isley. *See*

Defendants' Response to the United States' Supplemental Brief Regarding Tax Year 1974, at p. 25.

monies paid against the 1974 tax year liability to cover other tax years' liability.

11. Defendants argue that IRS notice was insufficient.

 Defendants' argument—made only in a party's brief—was not accompanied by any deposition, affidavit, or certification attesting to the fact that no notice was received, or that the notice received was insufficient or incorrect. *See* IRC §§ 6155, 6212, 6303. Therefore no issue of material fact is established. Factual claims made only in a lawyer's brief are not sufficient to withstand an opponent's demand for summary judgment.

12. Defendants argue that IRS must abate interest pursuant to IRC § 6404(e).

The Court, as explained above, has held that the amount of interest in the schedule of the Consent Order, an amount agreed to by the parties, is established as a matter of law of the case per Judge Bassler's prior opinion. With regard to interest accruing since 1984, the Defendants suggest that this amount should be abated per IRC § 6404(e). Although the Defendants have a substantial argument for equitable relief given the litigation conduct of its opponent throughout the course of this litigation, the particular statute cited by Defendants offers no avenue for relief. *See Magnone v. U.S.*, 733 F.Supp. 613, 619 (S.D.N.Y.1989) ("Congress specifically provided in the 1986 Act that § 6404(e) applies only to: interest accruing with respect to deficiencies or payments for taxable years beginning after December 31, 1978. The statute does not state that § 6404 applies to all interest accruing after December 31, 1978.") (citation and quotation marks omitted), *affirmed,* 902 F.2d 192.

13. Summary: 1974 tax liability.

Elaine Isley faces no tax liability for 1974. The Government's claim against Rudolph Isley is granted in the amount of $329,917.83 as of April 1, 2004. The Court's judgment will reflect this amount.

**B. 1976 Tax Liability**

1. Defendants argue that Elaine Isley has no 1976 tax liability.

The Court agrees. *See* Dec. of Elba Y. Porrata–Doria (March 18, 2004) (only alleging that Defendant Rudolph Isley faces tax liability for the 1976 tax year).

2. Defendants argue that the 1976 assessments do not enjoy presumption of correctness.

Defendants argue that the IRS never sent Defendant Rudolph Isley a notice of deficiency. Defendants' brief cites no affidavit, certification, or deposition testimony tending to establish that the IRS failed to give proper notice. Defendants' brief merely references an IRS transcript which does not mention that such notice was sent, but Defendants cite no statute or regulation (or custom) mandating that such transcripts reflect the issuance of notice.

Defendants also assert that the 1976 assessments were not timely—i.e., beyond the three year limit. Defendants' position was litigated and rejected by Judge Bassler in prior proceedings. *See* Bassler Op. 9 (*citing* Consent Order).

3. & 4. Duplicating [12] arguments made regarding 1974 tax liability, Defendants argue that the Government's (most recent) calculations do not enjoy the presumption of correctness per IRC § 7491 and that Government transcripts confirm that the statute of limitations had

---

**12.** The Court does *not* use the term "duplicat-

ing" as a pejorative. The Court specifically

passed.

For the reasons elaborated above discussing 1974 tax liability, the Court finds that these defenses are not applicable.

5. Defendants argue that 1976 tax and pre-petition interest was paid in full and duplicate the arguments regarding 1974 tax liability.

For the reasons elaborated above discussing 1974 tax liability, the Court finds that these defenses are not applicable.[13] The Government's calculations are based solely on the amount of unsecured priority claims (for tax and interest) agreed to in the Consent Order—with interest accruing prospectively from the time of the filing of the petition.

6. Defendants argue that the Government has failed to satisfy its burden of production.

■ Here, Defendants cite IRC § 7491(c) shifting the burden of production onto the Government and allege that the Government has failed to meet that burden. This provision was passed by Congress as Pub.L. 105–206, Title III, § 3001(a), July 22, 1998, *amended by,* Pub.L. 105–277, Div. J., Title IV, § 4002(b), Oct. 21, 1998. The Act specified in a footnote (apparently not reported in the United States Code) that the reforms were effective with regard to "court proceedings arising in connection with taxable periods or events beginning or occurring after such date of enactment [July 22, 1998]." *See* Pub.L. 105–206, 26 U.S.C.A. § 7491(c)(2) note. Therefore, the Court finds that this provision has no effect with regard to 1974 tax liability and assessments—imposed prior to the effective date of the statute, although after this suit was brought. *See supra* III[A][3] and nn. 5 & 6.

7. Defendants argue that the statute of limitations bars the collection of 1976 tax liabilities.

■ Here Defendants put forward several somewhat independent arguments. *First,* Defendants argue (again) that the statute of limitations bars collection of 1976 tax liability (incorporating by reference Section 6 discussing 1974 liability). Judge Bassler, rejected in prior proceedings, a statute of limitations defense grounded on the time of assessment. *See* Bassler Op. at 9; 26 U.S.C. § 6501. This is law of the case. As for the ten year statute of limitations to bring a collection action, that ran from May 25, 1984 through May 25, 1994. *See* 26 U.S.C. § 6502. The period was extended by the length of bankruptcy proceedings plus six months. In other words, August 23, 1984 through July 25, 1989 (the date of discharge) plus six months: a total of 5 years and 155 days. Thus the date to bring a collection actions was extended from May 25, 1994 through October 27, 1999. This suit was instituted September 20, 1999—therefore it is timely with respect to this tax year.

*Second,* the Defendants argue that they did not receive notice. This argument has already been addressed, and rejected, in prior discussion within this opinion.

*Third,* Defendants argue that the Government never made an assessment consis-

---

ordered the parties to expressly brief each argument for each tax year in dispute.

13. The Court notes that the 1976 Certificate of Assessments and Payments lists no *assessed* penalty for the 1976 tax year post-April 2, 1991 (the date of the Consent Order) or post-

August 23, 1984 (the date of the bankruptcy filing). The Government has conceded that pre-bankruptcy claims owed the Government have been paid through the bankruptcy proceedings. *See* United States Reply to Defendants' Responses to the United States' Supplemental Brief at 5.

tent with the 1991 Consent Order. The Bankruptcy Court's decision was dated April 2, 1991. Liability for unsecured priority claims included: $308,012.99 as tax liability, and $296,940.28 in interest—as of the date of filing the petition with interest accruing under statutory authority going forward. Prior to Defendant Rudolph Isley's filing for bankruptcy the Government assessed $523,953.70 for unpaid taxes, and subsequent to the Consent Order the Government abated $215,940.71. With the abatement, the Certificate of Assessment for 1976 reflected tax liability agreed to in the Consent Order, but not the interest. Interest accrued each day following the Consent Order. Therefore any entry on the Certificate or assessment for interest subsequent to the Consent Order would have to be for ever increasing amounts (less payments made) relative to the first in time Consent Order.[14] (Moreover, the Consent Order itself—whereby the parties agreed to the amount of initial interest owed—acts as functional notice.)

8 & 9. Duplicating arguments made regarding 1974 tax liability, Defendants argue in favor a statute of limitations defense and a defense grounded in misapplication of funds associated with the substantive consolidation of Rudolph's bankruptcy estate with that of his brothers.

For the reasons elaborated above, the Court finds that these defenses are not applicable.

10. Arguments made by Defendants in their Omnibus Opposition.

■ Here the Defendants argue that the inconsistency between the Government's most recent submission and calculation and prior calculations preclude the entry of summary judgment against Defendant. The Court has reviewed the most recent set of calculations and finds them pellucidly clear. The Government admits that *its* prior calculations were incorrect. The Court sees no law precluding the Court from making use of the Government's most recent of calculations. Moreover, all intermediate steps of the financial calculations are now shown (for the tax years covered by the Consent Order): from the initial calculations of tax and interest (wholly relying on the Schedule in the Consent Order) and all intermediate steps generating the final amount owed as of April 1, 2004. Defendants further argue—that absent missing IRS files which were destroyed by the Government—there is no way to ascertain the correctness of the Government's most recent submission. The Government's calculations are reliable because the initial tax and interest debt are taken straight from the Consent Order. And Defendants agreed to those amounts. The Isleys cannot challenge the amount of substantive liability embodied in the Consent Order: Rudolph Isley agreed to that amount.

Again, between the original "Quick Assessment" of May 25, 1984 and the subsequent abatement on January 3, 1994, the Certificate of Assessment of 1976 reflects the amount of tax in the Consent Order. No entries reflect the amount of interest in the Consent Order: $296,940.28. The Consent Order functioned as a waiver against assessment precisely because the amount was agreed to by the parties. Thereafter post-petition interest accrued per statute on the combined amounts of the Government's unsecured priority claim

---

**14.** *See* Bassler Op. at 12 ("the IRS's assessments ... against Rudolph ... for 1974, 1976, 1978, and 1982 tax years, are not barred by the statute of limitations."). Moreover, the amounts in the Consent Order are now res judicata with regard to these proceedings.

(tax—assessed, and interest—not assessed).

Here too, Defendants again attempt to raise insufficient notice and demand as an issue, but fail to bring forward any deposition, certification or affidavit in support of the factual representations made in their brief. Such arguments cannot withstand summary judgment.

And again, the Court notes that IRC § 6404(e) offers Defendants no relief: it only has application with regard to tax years 1979 and thereafter. *See Magnone v. U.S.*, 733 F.Supp. 613, 619 (S.D.N.Y. 1989).

11. Summary: 1976 tax liability.

Elaine Isley faces no tax liability for 1976. The Government's claim against Rudolph Isley is granted in the amount of $1,704,943.33 as of April 1, 2004. The Court's judgment will reflect this amount.

### C. 1978 Tax Liability

Defendants' positions regarding 1978 tax liability repeat the same general factual and legal arguments already discussed above for 1974 and 1976 tax liability. The Court summarily disposes of the contentions of the parties.

*First,* Elaine Isley has no 1978 tax liability. *See* Dec. of Elba Y. Porrata–Doria (March 18, 2004) (only alleging that Defendant Rudolph Isley faces tax liability for the 1978 tax year).

*Second,* Rudolph Isley is barred from relitigating the three year statute of limitations against assessments. *See* Bassler Op. at 12.

*Third,* Defendants have failed to introduce evidence that IRS notice was insufficient.

*Fourth,* the Government, in its most recently submitted set of financial calculations reveals both its initial assumptions regarding debt owed ($80,908.94 for tax,

and $65,285.07 for interest—amounts agreed to by Defendants Rudolph Isley in the Consent Order), and the amount of interest accrued since the filing of the bankruptcy petition. The Court sees no issue of material fact arising from IRS transcripts suggesting that the statute of limitations had passed.

*Fifth,* the Court denies Defendants' defense grounded in IRC § 7491.

*Sixth,* the instant suit was timely with regard to the ten year statute of limitations to bring suit.

*Seventh,* the Court denies Defendants' defense grounded on the fact that IRS transcripts indicate that the statute of limitations had expired. The last date to bring suit per the statute of limitations is determined by the Court as a matter of law based upon uncontested facts. The analysis is the same as that for 1976 discussed above.

*Eighth,* the Court denies Defendants' defense grounded on substantial consolidation of the estates.

Defendants additional arguments in their Omnibus Opposition have already been rejected with regard to prior discussion of 1974 and 1976 liability.

Elaine Isley faces no tax liability for 1978. The Government's claim against Rudolph Isley is granted in the amount of $412,019.52 as of April 1, 2004. The Court's judgment will reflect this amount.

### D. 1982 Tax Liability

The Court notes that Defendants have made several "new" arguments regarding 1982 tax liability: i.e., arguments that were not made with regard to the tax liability of the prior tax years discussed above.

■ *First,* Defendants note that an IRS letter to the Isleys indicated that the last

day for the IRS to bring a collection against the Isleys with regard to 1982 tax liability was May 13, 1999. *See* Letter of Ronald Settimo to Isleys (December 11, 1998), *as reported at,* Agostino Dec. Ex. S (June 28, 2002). The Government, by way of reply, relies on the plain terms of statutory authority: 26 U.S.C. §§ 6502(a), 7503. *See* Reply at 5. The Government notes that the last assessment for 1982 tax liability was dated September 18, 1989, and the Government's action may be brought within 10 years: September 18, 1999.[15] And because September 18, 1999 was a Saturday, the last day to act was pushed off until Monday, September 20, 1999. *See* 26 U.S.C. § 7503. Therefore, the Government made a timely filing that day: September 20, 1999. It is somewhat troubling that in prior correspondence with the Isleys the Government did not put forward the correct date: September 20, 1999, but rather put forward May 13, 1999—several months before the date the Government actually brought the suit. On the other hand, the Isleys have put forward no law establishing that the Government's *otherwise* valid and timely filing is voided by prior, but mistaken, Government correspondence to the taxpayer. Nor is the Court aware of any statute, rule or doctrine permitting the Isleys to make use of the Settimo letter (where these representations were made by the Government), even to avoid summary judgment. Nor have the Isleys established or introduced evidence tending to establish that they relied, as an equitable matter, on the Government's incorrect representations or that they were prejudiced in the conduct of this litigation by the Government's apparent misrepresentations (in the Settimo let-ter with regard to 1982 liability). Thus no issue of material fact is created.

*Second,* the Isleys argue that the April 1991 Consent Order authorized the IRS to make an additional tax assessment of $3,297 for 1982, and that the IRS transcripts are inconsistent with the Order. *See* Defs' Response to the United States' Supp. Brief Regarding Tax Year 1982, ¶¶ VI[8], VII. The Court sees nothing in the Consent Order authorizing an assessment in this amount. Therefore this argument is rejected.

Defendants' remaining positions regarding 1982 tax liability generally repeat the same general factual and legal arguments already discussed above for 1974, 1976, and 1978 tax liability. Again, Elaine Isley faces no tax liability for 1982. *See* Bassler Op. at 12. The assessments for 1982 tax liabilities were timely. *See* Bassler Op. at 10. The remaining arguments are repetitious and the Court rejects them for the same reasons it did so above for the prior tax years.

 Some explanation of the procedural history of this motion will be helpful to the reader here. 1974 is the earliest tax year in dispute in this litigation. By one measure, the Government's claims are roughly 30 years old. Timely assessments have been made over that 30 year period. The suit was brought 5 years ago. Throughout the course of this litigation the Government has made wildly varying calculations with regard to the amount of money the Defendants owe the Government. For example, in its April 1, 2004 submission the Government claimed Rudolph Isley owed $1,819,146.25, but by its August 27, 2004 submission, the Govern-

---

**15.** The Isleys claim that the last day for the Government to act was Friday, September 17, 1999. The Isleys are incorrect. 26 U.S.C. § 6502(a) requires that the Government's action be brought "within 10 years", not "prior to ten years passage." Thus September 18, 2004 was the last day to bring the action. The Court relies on the plain terms of the statute. And the Isleys cite no law supporting their contrary position.

ment claimed only $1,704,943.33 was owed. Magically, the Government's claims for penalties disappeared. In each submission by the Government, prior to its most recent submission served on its opponent 5 years after the start of litigation, the Government relied on its Certificates of Assessment and presented the Court only with final calculations (i.e., the amount allegedly owed) purportedly based on entries in the Certificates of Assessment. These calculations were attested to by an IRS technical services advisor, purportedly knowledgeable about IRS records and procedures. In each submission prior to its most recent submission, the Government eschewed revealing even the most basic intermediate calculations from the which the Court and its opponent might verify the correctness of the Government's purportedly ministerial arithmetic calculations. Always the Government stood on its presumption of correctness. The Court was of the opinion—throughout that part of this litigation that was before this Court—that the Government's calculations were wrong. And the Government in its most recent submission, of August 26, 2004, admits that *all* its prior calculations regarding the tax years covered by the Consent Order were incorrect. *It was not until 5 years into litigation with regard to 30 year old claims that the Government first produced arithmetically correct calculations consistent with the Consent Order (to which it too was a party) and payments made by the Defendant.* The Court takes the position that if all prior submissions made to this Court during the conduct of this litigation were wrong, then it is more likely than not (if not true beyond peradventure) that statutory man-

datory notice sent by the IRS to Rudolph Isley was also likewise incorrect. In these circumstances, the Government's claims for interest accruing post-August 1984 is abated. *See* IRC § 6404(e) (applying exclusively to tax years 1979 and forward only). The Government however is still entitled to the actual substantive liability agreed to in the Consent Order itself: $4,565.62 (for tax) and $792.02 (for interest). Thus, the Court grants in part and denies in part the Government's claims. Defendant Rudolph Isley had notice of these amounts in the Consent Order—to which he was a party.

### E. 1985 through 1988 Tax Liability.

The Government has moved for summary judgment on these years, contending that its claims against the Rudolph *and* Elaine Isley are merely taxes, penalties and interest based upon figures in the returns submitted by the Isleys, but not paid in whole. The Government stands on the presumption of correctness with regard to its assessments for taxes and penalties—and interest rate calculations made pursuant to statute.

 In each of these years, the Isleys filed their returns on September 11, 1989. The Isleys argue that the statute of limitations requires the Government to bring suit within 10 years of assessment, here the date of (late) filing.[16] Indeed, the Government's affidavit and supporting documents for these years list September 11, 1989 as the date the "RETURN FILED AND TAX LIABILITY ASSESSED". *See* Blaskopf Aff., Ex. E & F (Dec. 11, 2000). According to the Isleys, in these circum-

16. The Court sees no reason to give the Government the benefit of the six month grace period following the discharge of the bankruptcy petition on July 25, 1989. *See* Bassler Op. at 10 (The Isley bankruptcy petition filed was in 1984 and the "IRS could not assess or collect tax liabilities for years prior to 1984" until discharge was granted. Nothing prohibited assessment or collection of post-petition liabilities during the bankruptcy proceedings.).

stances suit must be brought by September 11, 1999, and because this suit was brought on September 20, 1999, it is untimely with regard to these tax years. *See* 26 U.S.C. § 6502(a) (10 year period). The Government, by way of reply, has made no legal argument to the contrary.

 Nevertheless, the Court, not the Government, is charged with determining applicable law—even where a party fails to give the Court guidance in a memorandum of law. Although the three-year statute of limitations for IRS assessment runs from the time of filing, see 26 U.S.C. § 6501, the ten year statute of limitations on collection runs from the time of assessment, see 26 U.S.C. § 6502. The time of assessment is not the date the tax payer submitted his voluntary tax filing, but rather is controlled by statute. *See* 26 U.S.C. § 6203 (assessment is ministerial act by Government officials); *see also Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.1992) (per curiam) (" 'the 23C date' ... [is] the date the assessment officer signed the [f]orm"); *Huff v. United States*, 10 F.3d 1440, 1446 n. 5 (9 th Cir.1993) (same). Here, the dates of assessment, the so-called 23C dates, for tax years 1985, 1986, 1987 and 1988 are supported by the documents attached to the Government's affidavit as 11/06/1989, 10/16/1989, 10/16/1989, and 10/09/1989 respectively.[17] *See* Blaskopf Aff., Ex. E & F (Dec. 11, 2000). Thus, for each of these years, the ten year collection period expired well after the September 20, 1999 complaint was filed by the Government.

The remainder of the Isleys' arguments regarding the tax years 1985 through 1988, as made in their Defs' Response to the United States' Supplemental Brief Regarding Tax Years 1985—1988, are identical to arguments already made with regard to prior tax years. These arguments have already been explained and rejected in prior discussion within this opinion.

The arithmetic calculations by the Government in the March 18, 2004 Elba Y Porrata–Doria[18] Declaration did not appear to the Court to be borne out by the Certificates of Assessment. In Porrata–Doria's August 26, 2004 Declaration, she further explains that the differences between the assessed penalties in the Certificates of Assessment (the IRS transcripts) and the amounts she attested were owed were wholly accounted for by application of tax accruing under IRC § 6601(e)(1). This penalty accrues at 0.5% percent per month over a period of 50 months and is not generally recorded in the transcripts. In her August 26, 2004 Declaration, Porrata–Doria presents IRS internal documents justifying this difference. For example, the 1985 transcript reflects $15,704.92 in penalties, but the Declaration states that $16,954.18 in penalties are due. The difference is $1,249.26—and in her August 26, 2004, Porrata–Doria attests that this difference is accounted for under IRC § 6601(e)(1). Moreover, her calculation for this penalty is borne out by IRS documents presented in her August 26, 2004 Declaration. The Court is satisfied with

---

**17.** The Court notes that the 23C assessment dates put forward by the Government correspond with the position Defendants put forward to Judge Bassler in prior litigation. *See* Defs' Memorandum in Support of Motion to Dismiss Amended Complaint, at 7 (March 2, 2000) (listing 1986, 1987 and 1988 expiration dates for collection as 10/16/99, 10/16/99, and 10/09/99—all prior to September 20, 1999, the date the instant suit was filed). Indeed,

Judge Bassler has already rejected Defendants' argument with regard to 1988 liability. *See* Bassler Op. at 12 (discussing collection of taxes). Moreover liability for each of these tax years (and for 1985) was first sought in the original complaint filed September 20, 1999, not in the amended complaint filed October 15, 1999.

**18.** An IRS Technical Services Advisor.

the Government's calculations presented in its two most recent submissions.

The Court distinguishes the tax years of the Consent Order from the years following the filing of the petition of bankruptcy. With regard to the years of the Consent Order, the Government's final position is that the Consent Order defines Defendant Rudolph Isley's liability as of August 1984. The Court agrees. However, notice based on the Certificates of Assessment may not have reflected those amounts because the Government only updated (through abatements) the amounts owed for tax, not the amounts owed for interest. Thus notice sent out for those tax years, automatically generated based on the entries in the Certificates of Assessment, may or may not, conform to the amount actually owed. It is more likely than not that notice was not correct. With regard to the post-Consent Order years, the Court sees no error in the Certificates of Assessment. Thus notice automatically generated from the Certificates is presumed correct.[19]

The Government's claim against Rudolph and Elaine Isley is granted in the amount of $223,656.24 as of April 1, 2004 for 1985 tax liability. The Court's judgment will reflect this amount.

The discussion above relating to 1985 liability applies equally to 1986 tax liability. Therefore, the Government's claim against Rudolph and Elaine Isley is granted in the amount of $104,718.96 as of April 1, 2004 for 1986 tax liability. The Court's judgment will reflect this amount.

The discussion above relating to 1985 liability applies equally to 1987 tax liability. Therefore, the Government's claim against Rudolph and Elaine Isley is granted in the amount of $106,483.66 as of April 1, 2004 for 1987 tax liability. The Court's judgment will reflect this amount.

The discussion above relating to 1985 liability applies equally to 1988 tax liability. Therefore, the Government's claim against Rudolph and Elaine Isley is granted in the amount of $83,971.57 as of April 1, 2004 for 1988 tax liability. The Court's judgment will reflect this amount.

The discussion above relating to 1985 liability applies equally to 1989 [20] tax liability. Therefore, the Government's claim

---

19. Defendants argue that the Government's calculations are inconsistent with the July 18, 2002 Settimo Affidavit. The Court does not agree. For 1985, according to the Settimo Affidavit, the tax due was in the amount of $67,701.83. That figure included: $35,693.00 (assessed tax); $8,030 (late filing penalty); $7,673.99 (failure to pay tax); $18,713.46 (assessed interest to date); with a credit for payment in the amount of $2,409.55. Additionally the affidavit noted an (unassessed) penalty for $1,249.26. This corresponds to the penny with the later Porrata–Doria affidavits—where the Government reported the calculations differently. Porrata–Doria listed $35,693.00 for assessed tax and a credit of $2,409.55. Penalties totaled $16,954.18 included $8,030.93 (assessed late filing), $7,673.99 (assessed failure to pay) and an unassessed penalty for $1,249.26. In other words, the two differences (beyond further accrued interest over the intervening years between the two affidavits) are: (1) that Settimo included assessed interest as part of the base tax due, but Porrata–Doria included the assessed interest due $18,713.46 as part of the running interest calculation, and (2) Settimo included the assessed penalties as part of the base tax due, but Porrata–Doria broke out penalties as a category (including both assessed penalties and the unassessed penalty under IRC § 6601. The two calculations are perfectly consistent. The two calculations are the same, but Porrata–Doria's are more transparent).

20. Tax years 1989 and 1990 also reflect a $26 discrepancy for lien fees. $16 of which is reflected in the Certificates of Assessment. Porrata–Doria states in her declaration that the remaining $10 hit the Certificate of Assessment in 2004—and is thus not reflected in the 2000 print outs within her Declaration.

against Rudolph and Elaine Isley is granted in the amount of $99,167.53 as of April 1, 2004 for 1989 tax liability. The Court's judgment will reflect this amount.

### F. Defendants' arguments relating to 1990 through 1997 Tax Liability.

The Government has moved for summary judgment on these years, contending that its claims against the Isleys are merely taxes, penalties and interest based upon figures in the returns submitted by the Isleys, but not paid. The Government stands on the presumption of correctness with regard to its assessments for taxes and penalties—and interest rate calculations made pursuant to statute.

Defendants' oppose the Governments and cite alternate calculations for interest and penalties as calculated in the Declaration of Karen Elder (May 10, 2004). Karen Elder's declaration does not affirm that she is an accountant or has any expertise with regard to the interest rate calculations at issue. Her declaration merely affirms that she made use of an off the shelf tax product. No information before the Court affirms that that program makes use of interest rates required by statute or that Karen Elder has first hand knowledge of the technical accuracy of the program used. Moreover, the Court is of the opinion that the discrepancies in the calculations were accounted for in that the Karen Elder's computations failed to fully assess penalties and interest on penalties. *See* 26 U.S.C. § 6651(a)(2) (for tax years 1985—

1998, except 1986, Karen Elder failed to apply 1/2 percent penalty per month); 26 U.S.C. § 6601(e)(2) (for tax year 1986, Karen Elder failed to taken into account interest on penalty mandated by 26 U.S.C. § 6601(e)(2)); *see also* [Reply] Declaration of Elba Y. Porrata–Doria §§ 4, 5 (May 19, 2004). Therefore, the Declaration of Karen Elder generates no issue of material fact.

The remainder of the Isleys' arguments regarding the tax years 1985 through 1997, as made in their Defs' Response to the United States' Supplemental Brief Regarding Tax Years 1985—1998, are identical to arguments already made with regard to prior tax years. These arguments have already been explained and rejected in prior discussion within this opinion. The additional arguments made in Defs' Omnibus Opposition have also been rejected by this Court.

Therefore, the Government's claim against Rudolph and Elaine Isley is granted in the amount of $15,403.47 as of April 1, 2004 for 1990 tax liability.

Therefore, the Government's claim against Rudolph and Elaine Isley is granted in the amount of $21,278.75 as of April 1, 2004 for 1991 tax liability.[21]

Therefore, the Government's claim against Rudolph and Elaine Isley is granted in the amount of $19,782.95 as of April 1, 2004 for 1994 tax liability.

Therefore, the Government's claim against Rudolph and Elaine Isley is grant-

---

**21.** The Court notes that the Government's calculation for Defendants' credits against taxes owed included a credit for $5,818.76. No document before this Court presented by the Government evidenced any such payment. This credit does appear in the calculations presented in the Karen Elder Affidavit. Ap-

parently, the Government's Certificate of Assessment was dated as of February 25, 2000 and this particularly payment was made February 26, 2000. Since the parties agree on this point, the Court will not question it—even absent evidence in the record.

ed in the amount of $23,302.93 as of April 1, 2004 for 1997 tax liability.

The Court's judgment will reflect these amounts listed above.

### G. 1998 Tax Liability

■■■ As explained above, IRC § 7491 applies to the 1998 tax year. This provision imposes a burden of production on the Government, 26 U.S.C. § 7491(c), and imposes the burden of proof on the Government if the "taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer." 26 U.S.C. § 7491(a). The Government concedes this. *See* United States' Reply to Defendants' Responses to the United States Supplemental Brief, at 3 (May 18, 2004) ("this provision . . . applies to one year at issue"). Although the presumption of correctness attaches to the Government's assessments for other tax years, the Government has put forward no proper calculations supporting its determination of the extent of 1998 tax liability. The Government has made an assertion as to how much is owed, but it has not shown its intermediate calculations supporting its final determination. Moreover, as explained above, the Court believes that there were no inconsistencies between the Government's presentations of tax liability in the Settimo Declaration of September 25, 2000 and the later in time Porrata–Doria Declarations with regard to the post-Consent Order years—except for 1998. For each tax year, the amount of the failure to pay ("FTP") penalty in the Settimo Declaration corresponds to the penny with the amount in the Porrata–Doria Declaration of August 26, 2004

which is also supported by IRS documentation as attachments. This is not true for 1998. The 1998 FTP amount is for $14,084.67 according to the Settimo Declaration. But this number is nowhere reflected in the Porrata–Doria Declaration of August 26, 2004. This is a contested issue of material fact because the Government has made (apparently) conflicting factual claims for a tax year in which statutory authority has imposed on the Government a burden of production and a burden of proof. For this reason, the Government's motion for summary judgment with regard to the 1998 tax year is denied.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Plaintiff's motion for summary judgment. For the reasons set forth above, the Court DENIES Defendant's motion for summary judgment.

A separate judgment against Rudolph Isley for the years covered by the Consent Order will be entered consistent with this opinion. A separate judgment against Rudolph and Elaine Isley will be entered consistent with this opinion for the years not covered by the Consent Order.