Joseph E. BUZZANCO, Jennifer L. Buzzanco, Norman H. Brandt, Gregory J. Buzzanco, Susan A. Buzzanco, Joshua G. Buzzanco, through his parents and natural guardians, Gregory J. Buzzanco and Susan A. Buzzanco, Joel C. Buzzanco, through his parents and natural guardians, Gregory J. Buzzanco and Susan Buzzanco, and Ameribond, Inc., Plaintiffs,

v.

LORD CORPORATION, MacDonald Illig Jones & Britton, LLP, and Robert Merski, Sheriff of Erie County, Defendants.

Civil Action No.01–106 Erie.

United States District Court, W.D. Pennsylvania.

Nov. 27, 2001.

John R. Wingerter, Carney & Good, Erie, PA, for plaintiffs.

Lynette Norton, Jennifer L. Poller, Picafio, McCall, Kane & Norton, Puttsburgh, PA, for Lord Corporation.

Vincent J. Grogan, Bethann R. Lloyd, Grogan, Graffam & McGinley, Pittsburgh, PA, for MacDonald Illig.

Mark R. Hamilton, Zimmer Kunz, Pittsburgh, PA, Arthur D. Martinucci, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, Pete Sala, Department of the Sheriff of Erie County, Erie, PA, for Robert Merski.

## MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Plaintiffs in this action assert claims pursuant to 42 U.S.C. § 1983 and state law against Lord Corporation (hereinafter "Lord"), MacDonald Illig Jones & Britton, LLP (hereinafter "MacDonald Illig"), and Sheriff Robert Merski. The claims arise out of the execution of a Writ of Seizure obtained by Lord in a state court replevin action. MacDonald Illig represented Lord in this action, and representatives of both Lord and MacDonald Illig allegedly accompanied deputies of the Erie County Sheriff and participated in the execution of the writ on March 31, 1999. Presently pending are three motions: 1) Merski's Motion to Dismiss or, in the Alternative, for Summary Judgment [Doc. No. 16]; 2) Lord's Motion for Judgment on the Pleadings [Doc. No. 21]; and 3) MacDonald Illig's Motion for Judgment on the Pleadings [Doc. No. 23]. For the reasons stated below, each of these motions will be granted.

## I. Background

Plaintiff Gregory J. Buzzanco was employed by Lord until he resigned on July 5, 1995, and was employed by Ameribond, Inc. (hereinafter "Ameribond") on March 31, 1999. Complaint ¶ 12. His brother, Plaintiff Joseph E. Buzzanco, was the owner and President of Ameribond on the date of the search. Both Lord and Ameribond are manufacturers of adhesives, and in a Complaint for Replevin and Injunction and Damages filed in the Court of Common Pleas of Erie County, Pennsylvania, Lord alleged that Ameribond's adhesives had been produced with its trade secrets. Complaint ¶¶ 11, 13.

On the same day that it filed its Complaint, Lord obtained an ex parte "Order for Special Injunction and Writ of Seizure" from the court, which provided in relevant part:

1. Lord has provided a reasonable basis for preserving, pending a hearing, documents, records and computer files

incorporating or embodying trade secrets and confidential information of Lord, including but not limited to customer lists, customer purchasing histories and patterns, customer contact names, supplier lists, and specific formulations and process techniques for preparing Lord adhesive and coating products, including those relating to high performance rubber-to-metal adhesives, and for obtaining access to personal computers and computer storage disks and tapes of Buzzanco which may have the information described above.

2. Notice to Buzzanco of the Court's action before the seizure of the documents, records and computer files in question could lead to copying, destruction, or concealment of documents, records, and computer files, incorporating or embodying Lord's trade secrets, and confidential information.

3. Any potential harm to Buzzanco can be adequately remedied by requiring the posting of a bond by Lord, which shall be posted in the amount of $200,000.00.

4. Given the sensitive and confidential nature of the trade secrets in this case, and the possibility that such material may be copied, destroyed or delivered to a third party, it is appropriate that the record in this case should be sealed. IT IS THEREFORE ORDERED, pursuant to Rules 1531 and 1075 of the Pennsylvania Rules of Civil Procedure, that the Erie County Sheriff shall seize and hold the property described below in the care, custody or control of Gregory Buzzanco located at 5130 Evans Road, Erie, Pennsylvania 16509 or at such where the same may have been stored by Buzzanco until further order of this Court:

(a) any and all originals and copies of documents, records, computer files, computer disks and tapes and computer hard drives containing, incorporating, or embodying Lord Corporation customer lists; customer purchasing history and patterns; customer contact names; supplier lists; and specific formulations and process techniques for preparing Lord's adhesives and coatings, including but not limited to its important and commercially-sensitive rubber-to-metal adhesives, as well as acrylic, urethane, and epoxy adhesives.

(b) all personal computers and computer disks and tapes within Buzzanco's possession or control, for purposes of forensic evaluation to determine whether information of this type contained in (a) above is contained therein.

Order for Special Injunction and Writ of Seizure at 1–3, Ex. A. to Answer to Complaint by Lord [Doc. No. 19].

As alleged by Plaintiffs, the search and seizure occurred as follows. At 5:15 p.m. on March 31, 1999, deputies of the Erie County Sheriff and representatives of Lord and MacDonald Illig arrived at Gregory J. Buzzanco's residence. Complaint ¶ 17. Buzzanco requested that he be permitted to have an attorney present during the search, and was informed that the search would proceed immediately. The participants searched tables, cabinets, CD cases and other items purportedly looking for property of Lord. Complaint ¶ 21. They seized a computer, monitor and keyboard from the residence.

The participants allegedly then asked Buzzanco where he had stored the Lord property. Complaint ¶ 23. He responded that he did not have any Lord property because he had not worked for the company in some years and presently worked for Ameribond. The participants then allegedly told Buzzanco that he was obligated under the state court order to accompany them to the Ameribond facility. Complaint ¶ 24. Buzzanco contacted his broth-

er and informed him that a court order authorized the party to search the Ameribond property and then took the party to the site.

Joseph E. Buzzanco objected to the search at the Ameribond offices, but was told by the party that they were authorized to conduct it. Complaint ¶ 28. The party allegedly did not find property belonging to Lord, but seized "various property of the Plaintiffs" without listing or itemizing such property. They then asked Joseph E. Buzzanco to produce Ameribond's checkbook, and he informed them that it was at his residence. Complaint ¶ 31. At 6:45 p.m., the search party left the Ameribond facility and proceeded to Joseph E. Buzzanco's residence. They allegedly did not find property belonging to Lord, but seized documents and computer records of Ameribond, Joseph E. Buzzanco and his wife Jennifer L. Buzzanco, Buzzanco Accounting, Asian Fighting Arts, and Industrial Systems and Controls without listing or itemizing the property seized. Complaint ¶ 45. The party left the residence at 9:30 p.m.

A hearing was held on April 1, 1999. Transcript of Hearing, Ex. C to Answer of MacDonald, Illig. Gregory J. Buzzanco and Joseph E. Buzzanco attended this hearing and were represented by counsel. On April 14, 1999, the Court of Common Pleas determined that Lord had established the probable validity of its claim of possession and of the grounds for the issuance of the writ, and confirmed the writ. Findings and Order for Preliminary Injunction and in Confirmation of Issuance of Writ of Seizure, Ex. D to Answer of MacDonald Illig. A Final Order of Court was issued on March 21, 2001, which, pursuant to a stipulation by the parties, directed the Buzzancos to deliver all documents relating to adhesives to Lord and erase from all computers in their care and control information relating to adhesives. Final Order of Court, Ex. E to Answer of MacDonald Illig.

## II. STANDARD OF REVIEW

The same standard is applied to assess motions to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings brought pursuant to Federal Rule of Civil Procedure 12(c). *Regalbuto v. City of Philadelphia*, 937 F.Supp. 374, 376–77 (E.D.Pa.1995), *aff'd*, 91 F.3d 125 (3d Cir.1995), *cert. denied*, 519 U.S. 982, 117 S.Ct. 435, 136 L.Ed.2d 333 (1996). In both, the district court must accept as true all well-pleaded allegations in the pleadings, and must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406 (3d Cir.1993) (citation omitted). The proper inquiry is "whether relief could be granted ... 'under any set of facts that could be proved consistent with the allegations.'" *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 71 (3d Cir.1994) (*quoting National Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Judgment will only be granted if it is clearly established that no material issue of fact remains to be resolved and that the movant is entitled to judgment as a matter of law. *Regalbuto*, 937 F.Supp. at 377 (*citing Inst. for Scientific Info., Inc. v. Gordon and Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir.1991), *cert. denied*, 502 U.S. 909, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991)). In deciding motions to dismiss, courts generally consider only the allegations in the complaint, exhibits attached thereto and matters of public record. *Pension Benefit Guar. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993).

## III. Discussion

### A. Section 1983

#### 1. Sheriff Merski

Plaintiffs have not specified whether they seek to hold Sheriff Merski liable in his individual capacity, official capacity, or both. A claim against an official in his individual capacity seeks to impose liability on the official for action he takes under color of state law, and in such cases, recovery is only against the official's personal assets. *Verde v. City of Philadelphia*, 862 F.Supp. 1329, 1332 (E.D.Pa.1994) (*citing Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). A claim against an official in his official capacity, on the other hand, alleges that the government entity's policy or custom inflicted the complained-of injury, and is tantamount to a suit against the government entity itself. *Id.* In official-capacity claims, recovery is against the entity's assets. *Id.* at 1332–33.

Plaintiffs have failed to state either type of claim in this case. Regarding individual-capacity liability, it is clear that in order for a defendant to be liable under section 1983, he or she must have personal involvement in the alleged wrongs; liability cannot be predicated on *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir.1988) (citations omitted). Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence, so long as these allegations are made with appropriate particularity. *Id.* at 1207–08 (citations omitted). Plaintiffs have not made any allegations that Sheriff Merski had personal involvement in this case, *i.e.*, that he knew of the search before it occurred, acquiesced or participated in it, or personally directed the participants in any way. In fact, aside from listing Merski as a party, Plaintiffs have failed to mention him at all. Complaint ¶ 8.

Respecting official-capacity liability, Plaintiffs have not alleged that they were harmed as the result of a government policy or custom, and the Complaint relates entirely to the specific actions taken by the executors of the writ on March 31, 1999. A local government cannot be sued under § 1983 for an injury inflicted solely by its employees; it is only when the execution of a government's policy or custom inflicts the injury that the entity itself is liable. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In this case, none of Plaintiffs' allegations can be construed to suggest that the complained-of conduct was part of a custom or policy of the County of Erie or of the Erie County Sheriff's Department. In light of the above, we find that Plaintiffs have failed to state a claim against Sheriff Merski and accordingly will grant his Motion to Dismiss pursuant to Rule 12(b)(6).

#### 2. MacDonald Illig and Lord

##### A. State Action

In order to state a claim under § 1983, a plaintiff must allege two things: 1) the violation of a right secured by the Constitution and laws of the United States; and 2) the commission of the deprivation by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The Supreme Court has made it clear that for purposes of § 1983, "under color of law" has the same meaning as "state action" as it has been defined under the Fourteenth Amendment. *United States v. Price*, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The principle of state action is that, "at base, 'constitutional standards are invoked only when it can be said that the [government] is *responsible*

for the specific conduct of which the plaintiff complains.'" *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (O'Connor, J., dissenting) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoted in *Mark v. Hatboro*, 51 F.3d 1137, 1141–42 (3d Cir.1995)) (alterations in original)).

Parties are deemed state actors in three situations: (1) when the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) when the private party has acted with the help of or in concert with state officials; and (3) when the State has so far insinuated itself into a position of interdependence with the private party that it must be recognized as a joint participant in the challenged activity. *Mark*, 51 F.3d at 1142 (citations omitted). Of these situations, it is the second that is relevant to this case. In *Mark*, the Third Circuit cited *Lugar* as an example of this type of state action.

In *Lugar*, the Supreme Court held that the petitioner's challenge to the constitutionality of a state prejudgment attachment procedure satisfied the state action requirement, but that his challenge to the misuse of the statute by private actors did not. *Lugar*, 457 U.S. at 940–42, 102 S.Ct. 2744. Lugar had been indebted to Edmondson, and Edmondson, ex parte, obtained a writ of execution pursuant to the Virginia statute, which the county sheriff executed. *Id.* at 924–25, 102 S.Ct. 2744. Count II of Lugar's Complaint alleged that Edmondson's "malicious, wanton, willfull, opressive [sic], [and] unlawful acts" caused the deprivation of his property. *Id.* at 940, 102 S.Ct. 2744. The Court set forth a two-part analysis to determine whether the conduct challenged by Lugar was "fairly attributable" to the State:

First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible ... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar*, 457 U.S. at 936, 102 S.Ct. 2744. With respect to Count II, the Court found that the requisite state action was not present:

By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State ... That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.

*Id.* at 940, 102 S.Ct. 2744. In this case, Plaintiffs' claims against MacDonald Illig and Lord are entirely based on their use of and participation in the state replevin procedure. They forswore any challenge to the constitutionality of the procedure itself at oral argument. Thus, the critical question is whether the *Lugar* analysis controls this case.

The procedure that was at issue in *Lugar* is similar to the procedure involved in this case. A distinction, however, is that Plaintiffs' challenges relate to the private defendants' participation in the execution of the writ rather than to their invocation of the procedure in the first instance. Plaintiffs allege, for instance, that the

search party was comprised of Sheriff's deputies, representatives of Lord, and representatives of MacDonald Illig, and that this party exceeded the scope of the writ by going to more locations and seizing more property than it authorized. Complaint ¶¶ 22, 26, 29, and 45. Plaintiffs also allege that one private actor threatened to tear apart the walls of Joseph E. Buzzanco's house if the party did not find what they were seeking. Complaint ¶ 32.

We find that the *Lugar* analysis controls in this instance. In *Downs v. Brasted*, No. 92–1611–MLB, 1995 WL 155005 (D.Kan. 1995), the district court considered a § 1983 challenge similar to ours. Professional Products of Kansas (PPK) had filed a lawsuit against Downs, its former president, alleging that he had disclosed confidential information to competitors. *Downs*, 1995 WL 155005, at *1. The company obtained an order to take immediate possession of certain property, and this order was executed by deputy sheriffs, accompanied and assisted by PPK employees. Paragraph 41 of Downs' Complaint alleged in pertinent part that:

> Then, on the afternoon of Friday, September 25, 1992 [defendants] under force and color of state law, wrongfully caused plaintiffs' office ... and home ... to be suddenly raided, and their personal belongings thoroughly searched and seized. Defendants had no legal basis or factual cause for conducting this highly invasive raid and outrageous intrusion upon the privacy and seclusion of plaintiffs' private home and office. These wrongful acts were accomplished through the joint participation, active assistance, and concerted efforts of two Sedgwick County deputy sheriffs, who forcefully descended upon Plaintiffs' home and office, and who physically accompanied and led interference for [defendants], as these persons indiscriminately rummaged and searched through

Plaintiffs' private closets, cabinets, drawers, clothing papers, and confidential files, while examining and arbitrarily seizing various and sundry personal property and confidential materials ...

*Id.* at *2. The court concluded that the gravamen of the Complaint was directed at the misuse of the statutory procedure rather than at its constitutionality, and consequently that the claim failed to meet the first prong of the *Lugar* state action test. *Id.* at *5. Similarly, in *Hassett v. Lemay Bank and Trust Co.*, 851 F.2d 1127, 1129 (8th Cir.1988), the Court of Appeals for the Eighth Circuit found that a § 1983 claim had not been stated when the "crux of the [plaintiffs'] complaint" was that a private actor, with the assistance of a sheriff who executed a state court replevin order, misused the state replevin statute and thereby unconstitutionally deprived the plaintiffs of their property. The plaintiffs alleged that the private actors executed a fraudulent affidavit in support of their petition, that the petition itself contained material false representations, and that the private actors fraudulently prepared, filed, prosecuted and executed the petition. *Id.* at 1129–30.

We find these cases persuasive. The gravamen of Plaintiffs' claims against MacDonald Illig and Lord is that they misused the Pennsylvania replevin procedure by going beyond the scope of the writ when they assisted the Sheriff's deputies in its execution. We do not find that the conduct of these private actors is fairly attributable to the state merely because the deputies utilized their assistance in carrying out their orders. As in *Lugar, Downs,* and *Hassett,* there is not a sufficiently substantial degree of cooperative action between the state and private actors in this case to impute any harm caused by the private actors to the state.

### B. Alternative Grounds

In the alternative, we find that Plaintiffs have failed to state a claim even assuming MacDonald Illig and Lord may be considered to have acted under color of state law. Plaintiffs complain that their civil rights were violated in the following respects: 1) their property was improperly searched; 2) their property was improperly seized; 3) they were effectively deprived of the right to counsel; and 4) they were threatened and intimidated. Specifically, Plaintiffs complain that the search and seizure was improper because it was conducted without notice and went beyond its intended scope, that Gregory J. Buzzanco was not permitted to have an attorney present during the search, and that they were wrongfully threatened and harassed. Complaint ¶¶ 15–47. We will discuss each of Plaintiffs' theories in turn.

### 1. Improper Search and Seizure

#### a. Collateral Estoppel

■ Plaintiffs' primary argument is that the search and seizure was improper because it was conducted without advance notice and went beyond its intended scope both in the places that were searched and the items that were seized. Defendants correctly argue that Plaintiffs are collaterally estopped from pursuing this theory. The doctrine of collateral estoppel bars the relitigation of an issue that has already been litigated in a court of competent jurisdiction if:

(1) the issue decided in the prior adjudication is identical to the one presented in the later action;

(2) there was a final judgment on the merits;

(3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication;

(4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5) the determination in the prior proceeding was essential to the judgment.

*DiNicola v. DiPaolo*, 25 F.Supp.2d 630, 666 (W.D.Pa.1998). In this case, Plaintiffs Gregory J. Buzzanco, Joseph E. Buzzanco, and Jennifer Buzzanco claim that their property was unlawfully searched and seized. Plaintiffs Norman H. Brandt, Joshua G. Buzzanco and Joel C. Buzzanco do not make such claims.

■ The issues litigated in the replevin action brought by Lord are identical to the issues Plaintiffs seek to litigate in this case. The purpose of the post-seizure hearing was to determine whether Lord had established the probable validity of its claim to possession of the items seized and the grounds for the ex parte issuance of the writ. Pa.R.C.P. 1075.2(d). The testimony and exhibits introduced at this hearing revealed the scope of the search, the items that were seized, and the ex parte issuance of the writ. On April 14, 1999, Judge Anthony recounted this information, determined that Lord had met its burden on these issues, and confirmed the issuance of the writ. Findings and Order for Preliminary Injunction and in Confirmation of Issuance of Writ of Seizure, Ex. D to Answer of MacDonald Illig. Thus, the precise issues of the scope of the search and the ex parte issuance of the writ have been previously litigated.

■ It is also clear that a final judgment on the merits was issued. On March 21, 2001, Judge Anthony issued a Final Order of Court which, pursuant to the stipulation of the parties, directed that the Buzzancos deliver all documents in their control relating to adhesives to Lord and erase all information relating to adhesives from computers in their control. Final Order of Court, Ex. E to Answer of Mac-

Donald Illig. A final judgment that is the result of the parties' stipulation is a final judgment on the merits for purposes of collateral estoppel so long as the parties intended it to resolve all issues raised in the action. *In re DiPierro,* 69 B.R. 279, 282 (Bankr.W.D.Pa.1987) (*citing Green v. Ancora–Citronelle Corp.,* 577 F.2d 1380, 1383 (9th Cir.1978)).

■ With respect to the third requirement, the parties in this action are the same as or are in privity with the parties in the replevin action brought by Lord. Courts have typically found privity to exist in three circumstances: 1) where the nonparty has succeeded to, or shares a concurrent right to the party's interest in, property, 2) where the nonparty controlled the prior litigation, and 3) where the party adequately represented the nonparties' interests in the prior proceeding. *First Options of Chicago v. Kaplan,* 913 F.Supp. 377, 383–84 (E.D.Pa.1996) (citations omitted). In this instance, we have no doubt that the parties to the prior proceeding adequately represented the interests of their close family members who reside with them.

We finally find that the Plaintiffs had a full and fair opportunity to litigate the issues in the prior proceeding and that the determination in the prior proceeding was necessary to the judgment. The Buzzancos were represented by counsel at the post-seizure hearing, and examined witnesses, admitted exhibits, and presented arguments on their behalf. As mentioned earlier, the issues in this hearing were identical to the issues the Buzzancos seek to litigate now. The determination was also necessary to the judgment. The matters at issue in a replevin action are the plaintiff's title and right of possession, and the primary relief is a return of the property. *Valley Gypsum Co., Inc. v. Pennsylvania State Police,* 135 Pa.Cmwlth. 548, 581 A.2d 707, 710 (1990). Therefore, the Final Order directing the return of the property could not have issued absent a determination that Lord had a right to possess it. In light of the above, we find that Plaintiffs are prevented from challenging the scope of the search and seizure by collateral estoppel.

#### b. Merits

■ Finally, we find that the execution of the writ was reasonable under the Fourth Amendment. In *United States v. Ramirez,* 523 U.S. 65, 71, 118 S.Ct. 992, 140 L.Ed.2d 191 (1998), the Supreme Court stated:

> [t]he general touchstone of reasonableness which governs Fourth Amendment analysis governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.

This case, of course, involves not a warrant but a state-court issued writ of seizure. Notwithstanding this distinction, the principle is germane and upon application of it to the facts of this case, we find that the conduct of the private actors was constitutionally permissible. Initially, the scope of the writ was broader than Plaintiffs allege. It did not restrict the permissible search area to Gregory J. Buzzanco's residence nor did it restrict the permissible seizure items to property owned by Lord. Rather, it authorized the seizure of relevant documents and computer equipment located at Buzzanco's residence or at other locations where it may have been stored by Buzzanco. In light of this order, the AmeriBond facility and Joseph E. Buzzanco's residence were reasonably searched, and the computer and documents were reasonably seized. Furthermore, Plaintiffs have made no allegation that any property was de-

stroyed during the execution of the writ. Given these facts, we find that the conduct of the private defendants did not exceed constitutional bounds in this case. Any violation of state law, if it occurred, is irrelevant to the federal constitutional reasonableness inquiry under the Fourth Amendment. *United States v. Conley*, 856 F.Supp. 1010, 1031 (W.D.Pa.1994)

### 2. Lack of Counsel

■ Plaintiffs have provided no authority for their assertion that they had a constitutional right to counsel during execution of the writ, and we find this theory to be without merit. The right of an accused to counsel guaranteed by the Sixth Amendment to the United States Constitution does not apply, and accordingly, Plaintiffs have failed to state a § 1983 claim with this theory.

### 3. Intimidation

■ In support of this theory, Plaintiffs allege that one member of the search party threatened to "tear apart the walls of your house" if the party did not find what it was looking for. Complaint ¶ 32. The Third Circuit has recognized, however, that verbal threats are not actionable under § 1983 absent an accompanying chilling effect on the exercise of a constitutional right. *Sterling v. Borough of Minersville*, 232 F.3d 190, 196 (3d Cir. 2000) (citations omitted); *Shreiber v. Mastrogiovanni*, 214 F.3d 148, 154 n. 7 (3d Cir.2000); *see also Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989). Plaintiffs have made no allegation that such a chilling effect resulted, and the facts alleged do not permit this inference. Accordingly, Plaintiffs have failed to state a claim under this theory as well.

### B. State Law Claims

Because we will dismiss the only federal claim alleged by Plaintiffs, we will dismiss the state claims as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).