In re Howard E. **DOUGAL**, Denise R. Dougal, Debtors.

Howard E. Dougal, Denise R. Dougal, Plaintiffs,

v.

Saxon Mortgage, as Servicer and Deutsche Bank Trust Company Americas, as Trustee and Custodian for Meritech Mortgage Loan Trust No. 2005–2 by Saxon Mortgage Services as its attorney-in-fact, Defendants.

Bankruptcy No. 07–70247–TPA.
Adversary No. 07–7069–TPA.

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 29, 2008.

---

Mary K. Wheeler, Ebensburg, PA, for Plaintiffs.

Sherri J. Braunstein, for Defendants.

## MEMORANDUM OPINION AND ORDER

THOMAS P. AGRESTI, Bankruptcy Judge.

In this Adversary Proceeding, the Debtors/Plaintiffs ("Dougals") are seeking relief under various theories against the current holder of the mortgage on their residence, Deutsche Bank Trust Company Americas ("Deutsche Bank") and the mortgage servicer, Saxon Mortgage.[1] For the reasons stated below, the Court will grant summary judgment in favor of Deutsche Bank as to one of the Dougals' claims.

## PROCEDURAL HISTORY

The pleading history of this case is somewhat complex but it is important to briefly recount it for an understanding of the Court's decision here. On October 15, 2007, the Dougals initially filed a *Complaint Seeking Damages in a Core Adversary Proceeding* ("Original Complaint") at Document No. 1, setting forth five counts, or "claims for relief" as the Dougals styled them, against Deutsche Bank and Saxon Mortgage, all related to a May 24, 2005 mortgage loan refinancing and an accompanying mortgage that was placed on their residence. The *Original Complaint* consisted of: a general claim that the Defendants had violated their duties to the Dougals in connection with the loan ("Count I"); a claim under the *Real Estate Settle-*

---

**1.** The Court has jurisdiction to hear this case under *28 U.S.C. §§ 157* and *1334* because it involves matters "arising under" *Title 11,* or "arising in" the underlying bankruptcy case. This is principally a core proceeding pursuant to *28 U.S.C. §§ 157(b)(2)(A)* and *(B)*. To the extent the Court would otherwise lack juris- diction to hear any aspect of this case, "related to" jurisdiction provides a sufficient basis for the Court to decide this matter because its decision will inevitably have an effect on the Bankruptcy estate. *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984).

ment Procedures Act ("RESPA"), *12 U.S.C. §§ 2601, et seq.* ("Count II"); a claim for the imposition of improper and unauthorized fees ("Count III"); a claim under the *Truth in Lending Act* ("TILA"), *15 U.S.C. § 1601 et seq.* ("Claim IV"); and, a claim under the *Pennsylvania Unfair Trade Practices and Consumer Protection Law* ("Pa. UTP Law"), *73 P.S. § 201–1 et seq.* ("Count V").

The Defendants filed an *Answer* on November 23, 2007, Document No 10, to the *Original Complaint* denying most of the key factual allegations and raising a number of affirmative defenses. On March 24, 2008, the Dougals filed a *Motion to Amend Adversary Complaint*, Document No. 21, which included a proposed *Amended Complaint Seeking Damages in a Core Adversary Proceeding* ("Amended Complaint") as an attachment. The *Amended Complaint* re-designated Count I as an "Objection" to the Defendants' Proof of Claim,[2] re-designated Count III as a violation of the automatic stay, and deleted the Count V claim under the *Pa. UTP Law.* The Defendants opposed the *Motion to Amend,* see Document No. 25. On May 23, 2008, the Court ultimately allowed the *Amended Complaint* to be filed, Document No. 35, except that any purported "class action" language was stricken.

On June 12, 2008, the Defendants filed an *Answer* to the *Amended Complaint,* Document No. 45. On that same date the Defendants filed the matter presently before the Court, that is, a **Motion to Dismiss and Motion to Strike Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), by Saxon**

*Mortgage and Deutsche Bank Trust Company Americas, as Trustee and Custodian for Meritage Mortgage Loan Trust 2005–2 by Saxon Mortgage Service, Inc., as its Attorney–in–Fact* ("Motion to Dismiss") at Document No. 46.

On July 7, 2008, the Dougals filed their **Response** to the *Motion to Dismiss,* Document No. 52, together with a *Motion to [sic] for Leave to Amend Adversary Complaint to Delete an Allegation in Count IV and to add Two Allegations to Count III of the Complaint,* Document No. 51, which included a proposed "Second Amended Complaint Seeking Damages in a Core Adversary Proceeding" as an attachment.

On July 18, 2008, the Court entered an Order, Document No. 56, providing that the portion of the *Motion to Dismiss* seeking to have the case dismissed would be treated as a motion for summary judgment because the Parties had submitted materials from outside the record in connection with the *Motion to Dismiss.* The Court's July 18, 2008 Order maintained a previously scheduled date of July 28, 2008 for argument on the *Motion to Dismiss.* In recognition of the conversion of part of the *Motion to Dismiss* into one for summary judgment, the Order also established a schedule for the Parties to submit statements of material fact along with an option to submit supplemental memorandums of law.

The Parties appeared before the Court on July 28, 2008, for argument on the *Motion to Dismiss.* The Court entered an Order the next day at Document No. 60

---

**2.** On February 26, 2008, the Honorable Jeffery A. Deller of this Court decided *In re Figard,* 382 B.R. 695 (Bankr.W.D.Pa.2008). The court concluded that when a general claim is made with allegations that a lender violated certain duties in connection with the grant of a loan (as was alleged in Count I of the *Original Complaint* in this case) such an allegation amounted to a simple negligence claim barred by the "gist of the action" doctrine. *See id. at 707–710.* The Court assumes that the re-designation of Count I in the Dougals' *Amended Complaint* was at least in part attributable to the issuance of the *Figard* decision.

which resolved part of the *Motion to Dismiss* and deferred resolution, in part. As a result of that Order: (1) Paragraphs 15–22 of the *Amended Complaint* were stricken as setting forth impertinent matters; (2) claims for attorneys fees and punitive damages related to Count I (Objection to Proof of Claim) were dismissed; (3) the Dougals voluntarily withdrew the *RESPA* claim alleged in Count II of the *Amended Complaint* as to both Defendants; (4) the Court refused to dismiss the violation of automatic stay claim in Count III of the *Amended Complaint;* and, (5) The Dougals voluntarily withdrew the *TILA* claim in Count IV of the *Amended Complaint* as against Defendant Saxon Mortgage, only. In all other respects, final ruling on the *Motion to Dismiss* was deferred pending receipt of the Parties' statement of facts.

In addition to the above rulings on the *Motion to Dismiss,* that same date, the Court also entered an Order granting the Dougals' request to file a Second Amended Complaint but absent the proposed allegations set forth in Paragraphs 42(c) and 69 since they were objected to as irrelevant and surplusage ("Second Amended Complaint"). See Document No. 59. Also, at the July 28, 2008 argument the Court verbally advised Counsel for the Dougals that when she actually filed the *Second Amended Complaint* she should modify the document from the one that had been attached to her Motion so as to reflect the Court's rulings on the *Motion to Dismiss* (for example, deleting Paragraphs 15–22). The *Second Amended Complaint,* with the required modification, was thereafter filed on August 21, 2008 at Document No. 71.

On August 22, 2008, the Defendants filed an *Answer* to the *Second Amended Complaint,* Document No. 74. With this filing in place, the remainder of the *Motion to Dismiss* dealing with the *TILA* claim in Count IV against Deutsche Bank is now ripe for decision.

## FACTS

Before turning to a legal analysis, it is necessary to provide some pertinent background information to explain the context in which the Dougals raised their *TILA* claim. The Dougals, husband and wife, have owned and resided in their residential property located at 215 North Avenue, Altoona, Pennsylvania, for over 30 years. *Second Amended Complaint,* Document No. 71, at ¶ 37–38. On May 24, 2005, the Dougals entered into a mortgage loan refinancing with Meritage Mortgage Corporation in the principal loan amount of $57,800. *Id.* at ¶ 39, Exhibit H. At the closing, most of the loan proceeds were used to pay off an existing mortgage on the property. The Dougals were provided with the requisite notices of their right to rescind[3] and were also provided with the disclosure statements required under *TILA. Id.*

On July 18, 2006, after the loan went into default, the Dougals were named as defendants in a state court foreclosure action in Blair County, Pennsylvania. On August 11, 2006, their attorney of record in that case[4] filed an answer on behalf of the Dougals. On an unknown date thereafter, the Dougals' state court attorney and the plaintiff in that foreclosure action,

---

**3.** The Dougals had originally alleged that they had not been provided with the *TILA*-required notices regarding their right to rescind. However, the Dougals' counsel subsequently advised the Court that her clients had in fact been given those notices and allegations to the contrary, formerly found in ¶¶ 42(c) and

69, were deleted in the *Second Amended Complaint.*

**4.** The Dougals' present attorney is different from their attorney in the state court foreclosure action.

Mortgage Electronic Registration Systems, Inc. ("MERS"), entered into a "Stipulation for Entry of Judgment in Mortgage Foreclosure" ("Stipulation"). The *Stipulation* provided that an *in rem* judgment in the amount of $65,031.31 as of July 12, 2006, would be entered against the Dougals but that the *Stipulation* would be held "in escrow" until December 9, 2006, to allow the Dougals time to reinstate or pay off the loan.[5] See *Motion*, Exhibit A. Upon failure by the Dougals to comply with their duties in this regard, the *Stipulation* could then be filed with the court and a sheriff sale scheduled. The *Stipulation* also included a release of all claims by the Dougals as against MERS and its successors and assigns relating to the servicing of the loan and the foreclosure action.

The Dougals did not reinstate or pay off the loan. On December 12, 2006, MERS filed a "Praecipe for Judgment Based on Consent Judgment Order" ("Praecipe") with the Blair County Court in the amount of $67,701.78 consisting of the $65,031.31 as set out in the *Stipulation*, plus interest and late charges from 7/13/06 to 12/12/06 in the amount of $2,538.27 and $132.20, respectively. (Hereinafter this filing will be referred to as the "foreclosure judgment". *See also* n. 7, *infra*). MERS also filed a "Praecipe to Issue Writ of Execution" and a sheriff sale was scheduled for March 14, 2007.

The Dougals filed their bankruptcy petition on March 10, 2007, thereby preventing the sheriff sale from going forward. The present adversary proceeding was filed on October 15, 2007.

### SUMMARY JUDGMENT STANDARD

For purposes of resolving a summary judgment motion, *Fed.R. Civ.P. 56* is made applicable to adversary proceedings through *Fed.R.Bankr.P. 7056*. Summary judgment is appropriate if the pleadings, depositions, supporting affidavits, answers to interrogatories and admissions that are part of the record demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Bankr.P. 56(c)*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate if no material factual issue exists and the only issue before the Court is a legal issue. *EarthData Int'l. of N.C., L.L.C. v. STV, Inc.*, 159 F.Supp.2d 844 (E.D.Pa.2001); *In re Air Nail Co.*, 329 B.R. 512 (Bankr. W.D.Pa.2005). The test under *Fed.R. Civ.P.* 56 is "whether the moving party is entitled to judgment as a matter of law." *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir.1999) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir.1994)). In deciding a motion for summary judgment, the Court must construe the facts in a light most favorable to the non-moving party. *United States v. Isley*, 356 F.Supp.2d 391 (D.N.J.2004). Once the moving party satisfies its burden of estab-

---

5. The timing of the events occurring in the foreclosure action is somewhat unclear because not all of the key documents are dated and the Court has not been provided with the case docket. Some of the information about timing that can be gleaned from the available records is puzzling. For instance, a date of "August 11, 2006" has been represented as the date for the filing of an answer by the Dougals' attorney because that is the date shown on his certificate of service. Although the *Stipulation* itself is not dated, the "Prae-

cipe to Enter Judgment" states that the *Stipulation* upon which the judgment was based was dated July 12, 2006. It is highly unlikely that the parties would have entered into the *Stipulation* a month before the answer was filed (and for that matter, before the foreclosure complaint was filed) so it is more probable than not that the July 12th date in the *Praecipe* is a mistake. Most likely, the date was taken from the foreclosure complaint, which calculates interest owed through that date.

lishing a *prima facie* case for summary judgment, the non-moving party must do more than raise some metaphysical doubt as to material facts. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir.1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). No issue for trial exists, in fact, unless the non-moving party can adduce sufficient evidence favoring it on the disputed factual issue such that a reasonable jury could return a verdict in its favor. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

### DISCUSSION

*TILA* was enacted in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Vallies v. Sky Bank*, 432 F.3d 493, 495 (3d Cir.2006), quoting *Rossman v. Fleet Bank (R.I.) Nat'l. Ass'n.*, 280 F.3d 384 (3d Cir.2002).

Count IV of the *Second Amended Complaint* attempts to set forth a claim against Deutsche Bank under *TILA* based on allegations that the Dougals did not receive the proper material disclosures in connection with the loan transaction, thereby triggering a right to rescind that was violated by Deutsche Bank when it refused to comply with a purported rescission letter dated December 3, 2007, that was sent on behalf of the Dougals by their Counsel. See *Second Amended Complaint* at ¶¶ 42, 44–47, 70–73. The *Second Amended Complaint* is somewhat unclear in articulating what relief the Dougals are seeking with respect to the alleged *TILA* violation because it is structured in such a manner that there is only a single prayer for relief section at the end of the entire pleading which "lumps together" all the relief being demanded for all of the counts rather than setting forth an individualized prayer for relief for each count. Nevertheless, it is reasonably clear to the Court that as to Count IV the Dougals are seeking the remedy of "rescission" of the mortgage and the remedy of "damages" in connection with the failure to act on its rescission letter.[6] For reasons which will become apparent, the Court will separately discuss each of these two requested types of relief.

### Rescission

■ The Defendants point to the *Stipulation* and the subsequent state court foreclosure judgment[7] as barring any *TILA*

---

6. There are explicit demands for damages of various types in the *Second Amended Complaint*. *See, id, Prayer for Relief* at ¶¶ A–C. Although the body of the *Second Amended Complaint* does make a number of references to relief in the form of "rescission" *(see, e.g., id.* at ¶¶ 42(d), 44, 45, 70 and 72), there is no specific request for that type of relief in the *Prayer for Relief*. The *Prayer for Relief* does, however, seek the avoidance of the Deutsche Bank lien and "such other and further relief as the court may deem just and proper." See, *id., Prayer for Relief* at ¶¶ G, H. In order to give the Dougals the benefit of any doubt, the Court will read these prayers for relief broadly and assume that in Count IV the Dougals are seeking rescissory relief in addition to damages.

7. The record is actually somewhat vague when it comes to the "foreclosure judgment". Although the Defendants make reference to a "judgment" having been entered, nothing from the Blair County court beyond the *Stipulation* and the *Praecipe* have been supplied, and in particular, nothing signed by a judge or the prothonotary. Nevertheless, the Dougals have not contested the existence of a judgment against them although they do contend it was entered into by their attorney without authority from them. The Court also notes that the *Pennsylvania Rules of Civil Procedure* do recognize that a "judgment" may be entered upon praecipe by a party. See *Pa. R.C.P. 3021(a)(3)*. Therefore, it is appropriate to conclude that a "judgment" was entered against the Dougals in the foreclosure action

claims by the Dougals in this Court pursuant to the *"Rooker–Feldman"* doctrine. That doctrine, which arises from application of *28 U.S.C. § 1257*, prevents "inferior" federal courts from sitting as appellate courts for purposes of reviewing state court judgments. *In re Knapper,* 407 F.3d 573, 580 (3d Cir.2005). Before turning to an examination of the doctrine in the context of this case, the Court first finds it necessary to consider a preliminary matter raised by the Dougals that goes to the validity of the foreclosure judgment, itself.

Specifically, the Dougals contend, and the Defendants offer nothing to refute the contention, that the foreclosure judgment was entered by their then-attorney without their knowledge and without authority from them. For purposes of this *Motion to Dismiss,* the Court must therefore assume this allegation to be true and then determine how that finding may affect the preclusive effect of the foreclosure judgment in this Court. *See Olasz v. Welsh,* 2008 WL 4559807 *1 (3d Cir. October 14, 2008) (in analyzing a motion for summary judgment, the facts must be viewed in a light most favorable to the non-movant and the non-movant is entitled to every reasonable inference that can be drawn from the record).

■ The method to be used for determining the preclusive effect of state court judgments was explained by the court in *Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) as follows:

> The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full

faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1897, 72 L.Ed.2d 262 (1982); see also *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts. See *Kremer, supra,* 456 U.S., at 478, 481–483, 102 S.Ct., at 1897–1898. Cf. *Riley v. New York Trust Co.,* 315 U.S. 343, 349, 62 S.Ct. 608, 612, 86 L.Ed. 885 (1942) (discussing preclusive effect of state judgment in proceedings in another State).

*Id.* at 380, 105 S.Ct. 1327.

■ When this rule is applied using Pennsylvania law it presents a significant problem for the Dougals' position. In *Bethlehem Steel Corp. v. Tri State Indus.,*

on December 12, 2006. The proper way to characterize this foreclosure judgment is as a "consent judgment." In fact, that is the manner in which the Dougals themselves described it in the *Motion to Vacate State Court Judgment,* Document No. 40, that they filed in

this Court. That motion was dismissed by the Court, *sua sponte,* for a variety of reasons, one of which was the failure by the Dougals to demonstrate that they had taken any steps in the state court proceeding toward opening or vacating the foreclosure judgment.

*Inc.*, 290 Pa.Super. 461, 434 A.2d 1236 (1981) a consent judgment had been entered several years previously and one of the parties to the judgment subsequently tried to strike the judgment because it had allegedly been entered by her attorney without authority. The court began by recognizing that the entry of a consent decree is accompanied by a *res judicata* effect that binds the parties with the same effect as a final decree rendered after a full hearing upon the merits. 434 A.2d at 469. See also, e.g., *Buzzanco v. Lord Corp.*, 173 F.Supp.2d 376, 385 (W.D.Pa. 2001).

■ The *Bethlehem Steel* court proceeded to recognize that an attorney has no authority to enter into a consent decree without the client's knowledge or consent. *Id.* As to the *effect* of a consent judgment entered by an attorney without the client's knowledge or consent, the court noted that the leading Pennsylvania authority up to that point in time characterized such a judgment as something that "will not be binding" but failed to say whether the judgment would be void or merely voidable. *Id.* at 472, 434 A.2d 1236 (citing *Senyshyn v. Karlak*, 450 Pa. 535, 299 A.2d 294 (1973)). After considering the arguments on this point, the *Bethlehem Steel* court stated: "we hold that a consent judgment entered into by an attorney is ... voidable even though the attorney alone cannot bind a party." *Id.* at 473, 434 A.2d 1236.

■ A voidable judgment is invested with the consequences of a legal judgment and is binding and enforceable until vacated or reversed. See 10 *Standard Pa. Practice 2d* at § 65:47 (2008). Thus, under Pennsylvania law, even assuming the attorney for the Dougals in the state court foreclosure action did not have authority from them to enter into the *Stipulation* on their behalf, leading to the foreclosure judgment, the foreclosure judgment is not thereby rendered void, only voidable. As such, the foreclosure judgment cannot now be collaterally attacked in this Court. *See, e.g., Dime Savings Bank, FSB v. Greene*, 813 A.2d 893, 895 (Pa.Super.2002); *In re Abboud*, 237 B.R. 777, 782 (10th Cir. BAP 1999).[8]

■ The foreclosure judgment must therefore be treated as a legal judgment by this Court in applying the *Rooker–Feldman* doctrine. That doctrine applies to those cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Ind. Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). A claim is barred under the doctrine:

[F]irst, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that the federal relief can only be predicated upon a conviction that the state

---

**8.** The proper forum to attack the allegedly voidable judgment is in the court system where it was entered. In the previous *sua sponte* dismissal of the *Motion to Vacate State Court Judgment*, Document No. 40, filed by the Dougals, the Court noted that they had failed to allege what steps, if any, they had taken in the Pennsylvania courts to get the foreclosure judgment opened or vacated. *See*

*Order* of June 3, 2008, Document No. 41 and n. 7, above. The Dougals have thus been on notice for at least 4 months that any attack on the foreclosure judgment needs to be made in state court. Despite notice of the appropriate procedure, the Court has been presented with no evidence whatsoever to indicate that the Dougals have undertaken any such attack on the foreclosure judgment.

court was wrong. In either case, *Rooker–Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.

*Knapper, 407 F.3d at 580.*

■ The *Rooker–Feldman* doctrine thus applies to bar claims in federal court if (1) the claim was actually litigated in state court, or, (2) the federal claim is "inextricably intertwined" with the state adjudication. A federal claim is considered to be inextricably intertwined with a state court adjudication when the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief sought, or must take action that would negate the state court judgment. *Id. See also,* this Court's decision in *In re Holler,* 342 B.R. 212, 220 (Bankr.W.D.Pa.2006).

■ The Defendants essentially concede that the *TILA* claim was not actually litigated in the foreclosure action but argue that the "inextricably intertwined" prong applies. Defendants note that the Dougals are seeking rescission of the mortgage in their *TILA* claim and that this Court can only grant that kind of relief by effectively preventing the state court from enforcing the foreclosure judgment, that is, by undercutting the very basis for that judgment through invalidation of the mortgage. Defendants rely heavily on *Piotrowski v. Federman & Phelan, LLP,* 2005 WL 3118031 (Bankr. M.D.Pa.2005) where the court invoked the inextricably intertwined prong of *Rooker–*

*Feldman* to prevent the litigation of federal claims under various federal and state consumer statutes (although *TILA* was not among them) because of the existence of a state court foreclosure judgment.

The Dougals counter by arguing that they could not have brought a *TILA* claim in the foreclosure action and that, therefore, pursuit of a *TILA* claim here should not be found to be inextricably intertwined with the state court action. They cite *New York Guardian Mortgage Corp. v. Dietzel,* 362 Pa.Super. 426, 524 A.2d 951 (1987) and *Fleet Real Estate Funding v. Smith,* 366 Pa.Super. 116, 530 A.2d 919 (1987) for the proposition that a *TILA* claim may not be raised in a mortgage foreclosure action because such is strictly an *in rem* proceeding and *TILA* permits a party to raise a claim thereunder only in an original action brought by the consumer or as a counterclaim in an action to collect a money judgment (citing *15 U.S.C. §§ 1640(e),* and *(h)).* In other words, the Dougals claim that if they could not have raised a *TILA* claim in the foreclosure action it would be unfair to bar such a claim here.[9]

Different types of relief which this Court might conceivably supply in response to a *TILA* claim, such as this case presents, would have different effects on a prior state foreclosure judgment. For that reason, resolution of the issue regarding the applicability of the *Rooker–Feldman* doctrine in relation to the *TILA* claim is unavoidably tied to the type of relief being sought by the Plaintiffs. Here, *Rooker–*

---

9. The Dougals' argument on this point is not persuasive. Although they may have been precluded from asserting a *TILA* claim within the setting of the *in rem* state foreclosure action because of the manner in which Pennsylvania courts interpret the relevant provisions of *TILA,* nothing prevented the Dougals from commencing an independent action in state or federal court to pursue a *TILA* claim.

Indeed, that possibility was recognized in the very decision relied upon by the Dougals in support of their argument. *See Dietzel,* 524 A.2d at 953 (recognizing that a claim under *TILA* can be asserted "in an original claim brought by the consumer."). Thus, any alleged unfairness to the Dougals on this point is illusory.

*Feldman* deprives the Court of subject matter jurisdiction and thereby bars a claim under *TILA* seeking rescission as a remedy when there has been a prior state court mortgage foreclosure judgment: rescinding the mortgage would have the effect of invalidating the state court foreclosure judgment. On the other hand, the doctrine does not bar a claim under *TILA* for damages because that kind of relief can be granted without affecting or undermining the state foreclosure judgment. A number of cases from the Eastern District of Pennsylvania have examined this same issue and reached a similar conclusion. *See, e.g., Laychock v. Wells Fargo Home Mortgage,* 2008 WL 2890962 *6 (E.D.Pa. July 23, 2008), *In re Reagoso,* 2007 WL 1655376 *2–3 (Bankr.E.D.Pa.2007), *In re Cooley,* 365 B.R. 464 (Bankr.E.D.Pa.2007); *In re Stuart,* 367 B.R. 541, 550 (Bankr. E.D.Pa.2007); *In re Madera,* 363 B.R. 718, 725 (Bankr.E.D.Pa.2007); *In re Randall,* 358 B.R. 145 (Bankr.E.D.Pa.2006). *See also, Ayres–Fountain v. Eastern Savings Bank,* 153 Fed.Appx. 91 (3d Cir.2005) (in non-*TILA* setting, pursuant to *Rooker–Feldman* doctrine the District Court lacked subject matter jurisdiction over complaint seeking rescission of mortgage because grant of relief would invalidate state court judgment against mortgagor).

The Court concludes that the approach taken in the cases from the Eastern District of Pennsylvania on this point makes sense in light of the concerns that underlie the *Rooker–Feldman* doctrine. As the court in *Cooley, supra,* succinctly put it, the conclusion that the grant of a rescission would negate the foreclosure action is the "death knell" of the claim seeking the rescission. 365 B.R. at 473. That is true regardless of the fact that the Debtors could not have pursued a *TILA* rescission claim in the foreclosure action. Thus, the Court concludes that under the *Rooker–Feldman* doctrine it lacks the power to provide rescissory relief to the Dougals in this case because of the pre-existing consent foreclosure judgment in the Blair County Court of Common Pleas. Accordingly, the claim for rescission under *TILA* in Count IV must be dismissed.[10] On the other hand, however, *Rooker–Feldman* does not prohibit the award of damages in this case for a *TILA* violation, so the Court now turns to a separate examination of that aspect of Count IV.

### Damages

■ The Dougals also seek damages from Deutsche Bank under *TILA* for its failure to comply with the purported rescission letter sent by Dougals' counsel on December 28, 2007.[11] As a general princi-

---

**10.** Based on this conclusion there is no need for the Court to consider the alternative summary judgment ground of *res judicata* advanced by the Defendants.

**11.** The Court does not read the *Second Amended Complaint* as seeking damages for any material disclosure violations that may have occurred in connection with the loan transaction documents. Although there are allegations of such material disclosure violations in the *Second Amended Complaint,* they are made not to claim any concomitant right to damages, but rather only as a supporting predicate for the claimed right to rescind. See *Second Amended Complaint* at ¶¶ 42(D), 43, and 70. Moreover, even if the Court were

to read the *Second Amended Complaint* as seeking damages for disclosure violations, it would be of no avail to the Dougals. *TILA* provides that an action for damages must be brought within one year from "the date of the occurrence of the violation." *15 U.S.C. § 1640(e).* In this case the loan transaction took place on May 24, 2005. If a disclosure violation existed, that is when it would have occurred. *See, e.g., In re Figard,* 382 B.R. 695, 714–15 (Bankr.W.D.Pa.2008) ("one year statute of limitations began to run, at the very latest, on October 27, 2004, which was the date of the final Truth in Lending statement."); *Oldroyd v. Assocs. Consumer Disc. Company/PA,* 863 F.Supp. 237 (E.D.Pa.1994) (one-year statute of limitations began to run

ple, damages can be awarded under *TILA* for a creditor's violation of a debtor's rescission rights under the statute. *See 15 U.S.C. § 1635(g)* (in any action in which it is determined that a creditor has violated debtor's rescission rights the court may also award damages pursuant to *15 U.S.C. § 1640). See, e.g., In re Wentz*, 393 B.R. 545, 553 (Bankr.S.D.Ohio 2008) (examining the legislative history of *Section 1635(g)* and concluding that it was intended to allow a debtor to simultaneously sue for both rescission and damages). However, for a number of reasons, the Court finds that such damages are not available under the particular facts of this case. Therefore, summary judgment in favor of the Defendants is appropriate as to this damage claim.

■ First, any award of damages for failure to rescind must be premised on a conclusion that the Dougals did, in fact, have an enforceable right to rescind under *TILA* when the rescission letter was sent. *See Smith v. Fidelity Consumer Disc. Co.*, 898 F.2d 896, 903 (3d Cir.1990) (entitlement to statutory damages for denial of request to rescind is wholly dependent upon and flows directly from entitlement to "rescissory relief"). In this case, as was discussed above, pursuant to the *Rooker–Feldman* doctrine the state foreclosure judgment (entered on December 12, 2006) effectively ties the Court's hands and prevents it from granting a rescission. The purported notice of rescission was not sent out by Plaintiffs until December 28, 2007, more than a year after the foreclosure

judgment had been entered. Because there is no enforceable right of rescission, there is no basis for an award of damages for failure to honor the notice of rescission.

■ Second, and more generally, *TILA* does not permit an award of damages against an assignee for failure to honor a notice of rescission. In *Brodo v. Bankers Trust Co.*, 847 F.Supp. 353 (E.D.Pa.1994) the plaintiff sought to have a statutory damage award imposed against an assignee for failing to honor a rescission notice. The court noted that *TILA* defines a "creditor" against whom such damages may be awarded as the entity to which "the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." *Id. at 359*, citing *15 U.S.C. § 1602(f)*. The court went on to say:

> While *§ 1641(c)* [of *TILA*] provides that the right to rescind exists even against a creditor's assignee, *§ 1640(a)* permits only a "creditor" to be held liable for a monetary penalty or an award of attorney's fees for a *TILA* violation. Neither *§ 1641* nor any other section provides for a statutory penalty or an award of attorney's fees to a plaintiff should an assignee fail to respond to a valid rescission notice. Rescission is therefore the only remedy against Bankers to which plaintiff is entitled.

847 F.Supp. at 359. *See also, e.g., Kane v. Equity One*, 2003 WL 22939377 *6 (E.D.Pa.2003); *Ocasio v. Ocwen Loan Ser-*

from date of mortgagee's failure to make required disclosures when mortgagors refinanced their home mortgage). This bankruptcy case was not filed until March 10, 2007, well after the statute of limitations had run. Furthermore, since Deutsche Bank is an assignee that was not involved in the original loan transaction, it could only be liable for disclosure violations that were "apparent on

the face of the disclosure statement provided in connection with such transaction." *See 15 U.S.C. § 1641(e)*. The Dougals have made no allegations that any of the alleged disclosure violations were "apparent". The "statute of limitations" affirmative defense was included in the Defendants' *Answer* and raised by the Defendants at the July 28, 2008 hearing.

*vicing, LLC,* 2008 WL 2856392 *2 (E.D.Pa., July 23, 2008).[12]

In this case, the Dougals admit that the creditor with whom they entered into the loan transaction was Meritage Mortgage Corporation[13], and that Deutsche Bank did not participate in the consummation of the mortgage transaction in any way whatsoever. (See Defendants' *Concise Statement of Uncontested Material Facts* and Plaintiffs' *Response* at ¶¶ 1, 7, Document Nos. 65, 68). Thus, the Dougals cannot recover damages against Deutsche Bank, as assignee, for its failure to honor the rescission notice. Summary judgment is therefore appropriate for that reason as well.

## CONCLUSION

For the foregoing reasons, the Court will grant summary judgment in favor of Deutsche Bank with respect to the *TILA* claim in Count IV of the *Second Amended Complaint.* Since the Dougals previously withdrew the *TILA* claim in Count IV as against Saxton Mortgage (see *Order* dated July 29, 2008 at Document No. 60), Count IV has now been completely dismissed from this action. Additionally, the *RESPA* claim alleged in Count II was previously withdrawn by the Dougals. *Id.* Therefore, the only remaining claims in the *Second Amended Complaint* are Counts I and III as against both Defendants and the case will proceed as to those.

## ORDER

*AND NOW,* this *29th* day of *October, 2008,* for the reasons stated above, it is *ORDERED, ADJUDGED and DE-*

*CREED* that, since no genuine issue or dispute as to any material facts exist, the remainder of Defendants' *Motion to Dismiss and Motion to Strike Pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(6), 12(f), by Saxon Mortgage and Deutsche Bank Trust Company Americas, as Trustee and Custodian for Meritage Mortgage Loan Trust 2005–2 by Saxon Mortgage Services Inc. as Its Attorney-in-fact* filed at Document No. 46, being treated in the form of a Motion for Summary Judgment as to the matters considered herein, is *GRANTED.* Defendant Deutsche Bank Trust Company Americas is entitled to judgment as a matter of law against the Plaintiffs, Howard E. Dougal and Denise R. Dougal as to Count IV of the Second Amended *Complaint* alleged under *TILA* and the same is *DISMISSED.*

It is *FURTHER ORDERED* that the *Final Pretrial Conference* on those remaining claims as set forth in Count I and Count III of the *Second Amended Complaint,* involving the Debtor's objection to the Proof of Claim and the Defendants' alleged violation of the Automatic Stay provision set forth in *11 U.S.C. § 362(d),* respectively, is scheduled for *November 17, 2008 at 10:00 A.M.* in Courtroom D, U.S. Steel Tower, 600 Grant Street, Pittsburgh, PA 15219.

**12.** *But see Fairbanks Capital Corp. v. Jenkins,* 2002 WL 31260011 (N.D.Ill.2002) (assignee that fails to honor a rescission notice could be liable for attorney fees under *TILA). Fair-* *banks,* however, represents a distinctly minority view which this Court declines to adopt.

**13.** Meritage Mortgage corporation was never made a party to this action.